## CAMPBELL *v.* THE STATE.

1. There was no error, on the trial of two persons upon an indictment for murder, in charging as follows: "Notwithstanding the indictment in this case, the defendants enter into this trial with the presumption of innocence in their favor, which presumption rests with them throughout the trial, until the State by satisfactory evidence overcomes that presumption and establishes their guilt upon each material allegation contained in the indictment and beyond all reasonable doubt."

2. Where in such a trial the evidence for the State was entirely circumstantial, and the court fully, correctly and distinctly instructed the jury as to the law of reasonable doubt and also charged that there should be no conviction unless the evidence excluded every other reasonable hypothesis except that of the guilt of the accused, though it would have been better to omit such language as that below quoted, its use was not calculated to mislead the jury into believing that they would be authorized to convict without being satisfied beyond a reasonable doubt of the guilt of the accused and also that there was no other reasonable hypothesis except that of guilt. The following is the language above referred to: "Was [the deceased] murdered in this county, in the manner and at the time as alleged in the indictment? If so, who does the evidence point to with reasonable and moral certainty? Does it point to the [accused]; if so, you should convict them; if not, you should acquit them."

3. The grounds of the motion for a new trial relating to newly discovered evidence are not meritorious. . This evidence might, by the exercise of due diligence, have been obtained before the trial, and moreover, it is not of such a character as would probably produce a different result.

4. There was sufficient evidence to authorize the verdict, and the same having been approved by the trial judge, this court does not feel warranted in setting it aside.

Argued February 15,—Decided February 26, 1897.

Indictment for murder. Before Judge Hart. Jasper superior court. September term, 1896.

The indictment charged James M. Campbell and Adaline Gray with the murder of William Campbell by shooting him. In other counts Adaline Gray was charged as accessory before and after the fact. The jury found the defendants guilty, with recommendation of life imprisonment. A new trial was granted as to Adaline Gray, and denied as to James M. Campbell, and he excepted.

The testimony shows that the deceased was assassinated on the afternoon of July 1, 1896, being shot with a rifle-ball from ambush, while he was plowing a field. He was a brother of defendant Campbell. The testimony connecting defendant with the murder was circumstantial. Among other things it appears, that a witness who was near by and heard the report of the weapon and saw the deceased fall, went with another witness, Driskoll, immediately to defendant's house, and when within about fifty yards of it, saw Adaline Gray sitting by the kitchen window, looking toward the place of the killing. Driskoll told her some one had knocked deceased in the head. Another witness saw defendant and Adaline coming from the cook's house toward defendant's house, she being in the act of telling defendant that Driskoll had said that some one had knocked deceased in the head; whereupon witness informed them that deceased had been killed. Upon this defendant dropped on the ground a flask about three-fourths full of corn whisky, breaking it. In the neck of this flask was a cork from which a piece had been broken off; and a piece of cork smelling of what the witness supposed was rye whisky, and which fitted to the broken cork in the flask so dropped, was found in a ditch or "branch" very near where deceased was seen to fall at the report of the weapon. Tracks were found leading to this spot in the ditch, which was six or seven feet deep and lined with shrubbery on each side, but comparatively clear

at the spot mentioned. Here was found also what appeared to be the print of a man's knee on the bank of the ditch next to where deceased fell. At the time of the conversation when defendant dropped and broke the flask, he was wet with perspiration, and his right foot and the left knee of his pantaloons were muddy. In going to the place of the killing with two witnesses, he said he was tired, and "looked like he could not get along." He did not seem to be very drunk. Adaline said he had been out somewhere asleep. On the Sunday night before the killing, the deceased cursed Adaline; and she told defendant that deceased had threatened her, that defendant had promised to protect her, and he must stop deceased or she would take her things and leave. He told her he would do so, and would see deceased. On the same Sunday evening, deceased being at defendant's house and having remonstrated with him for drinking to excess, defendant said, "William, you will not see me alive any more. I will not be with you but three days, and you will not be with me but three days more. If I don't kill myself drinking liquor, I will blow my brains out. If I don't, I will kill some d—d son of a b—h." Deceased said, "Cap, is it me?" or according to another witness: "I hope, Cap, it isn't me." To which defendant replied, "William, you hear what I say." A witness testified that defendant was drunk at this time, and had been drinking for some weeks; and that on the morning of the killing he left the house to carry breakfast to Jack Campbell, carrying his rifle; and when he returned he did not have the rifle. A little after one o'clock he again left the house, carrying a pistol and a flask of whisky, saying he was going to look after his back branch pasture fence. This pasture joins the lot, and the branch on which the killing occurred runs through it. That night defendant's rifle was looked for in his and Adaline's house, and it was not found. On the same night defendant came and called Adaline out of the house, and after some conversation between them outside she returned bringing

in a rifle. A witness testified that he examined it on the next evening, and noticed a little mud on the barrel, and spider-web, pine-straw, and mould. Jeff Campbell, a cousin of defendant and deceased, testified that, before the killing, defendant told him he had overheard deceased say to Jack Jordan that he was going to kill him, and that he would have all of that plantation; and further told witness: "He is going to kill you too, just to get you out of the way. I will tell you now, and if you tell anybody, damned if I don't put a hole right through and through you right here. My life is as sweet to me as William's is to him. He had better kill me pretty soon, either to-night or to-morrow night. If you are scared, I be damned if I don't take a chance and kill him." Other circumstances appeared, such as the buying of rifle cartridges by defendant a few days before the killing, the size of the tracks before referred to, location of objects on the premises, distances, etc.; and the broken bottle, pieces of cork, rifle-ball and rifle were in evidence.

The grounds of the motion for new trial, which are here material, appear in the opinion. The newly discovered evidence was: (1) that on the day after the homicide Harman M. Reeves examined defendant's rifle to see if it had recently been shot off; and found it had mould on the muzzle, and it showed in his opinion that it had not recently been discharged. (2) Leila Griggs and Sallie Thurman will testify that they were present at the time and saw defendant, when informed of the hurt to his brother, throw down and break into small pieces the flask of whisky; that this flask had in it at the time an unbroken cork stopper; that it was of different shape from the flask introduced at the trial; and that on the day after the homicide, Sallie Thurman picked up the pieces and threw them into the garden. (3) R. D. Phillips and B. M. Whitten will testify that on October 16, 1896, they were shown by Sallie Thurman the spot where defendant broke the flask; that they closely examined the

spot, and found at that particular place in the grass and under some trash an unbroken cork stopper of the size to fit a bottle of the description given of the bottle Sallie Thurman swears defendant had at said time, the same now in possession of J. D. Kilpatrick. There was a counter-showing by the State, which, if credible, rebuts the alleged newly discovered evidence. In the affidavit of defendant's counsel they say nothing touching the exercise of any diligence on their part to discover evidence and prepare for trial.

*F. Jordan & Son, J. C. Key, J. W. Preston* and *J. D. Kilpatrick*, for plaintiff in error.

*J. M. Terrell*, attorney-general, and *H. G. Lewis*, solicitor-general, by *Anderson, Felder & Davis*, contra.

FISH, Justice.

The first four grounds of the motion for a new trial are the general grounds that the verdict is contrary to law, evidence, etc. The fifth ground is, that the court erred in charging as follows: "Notwithstanding the indictment in this case, the defendants enter into this trial with the presumption of innocence in their favor, which presumption rests with them throughout the trial, until the State by satisfactory evidence overcomes that presumption and establishes their guilt upon each material allegation contained in the indictment and beyond all reasonable doubt." The exception to this charge is that, "by the use of the word *'until'* in this connection and followed by the subsequent clauses set out, the court intimated to the jury an opinion that this presumption of innocence had been overcome." We do not think the exception well taken. It would have been better to have used the word *unless* instead of *until*, but the evident meaning of the charge is that the presumption of innocence rests or remains with the defendants throughout the trial, *or* until, or up to, the time that the State overcomes it, &c. The present and not the past tense is used throughout this part of the charge. It says that the de-

fendants enter (not entered) into their trial with the presumption of innocence in their favor; that this presumption rests (not rested) with them until the State overcomes (not overcame) it, and establishes (not established) their guilt beyond all reasonable doubt. This language is not susceptible of the construction that the presumption of innocence had been overcome by evidence for the State, and the jury could not have so erroneously construed it. We think there was no error in the charge.

2. It is complained that the following charge was erroneous: "Was Campbell murdered in this county, in the manner and at the time as alleged in the indictment? If so, who does the evidence point to with reasonable and moral certainty? Does it point to the defendants Campbell and Adaline Gray? If so, you should convict them; if not, you should acquit them." The exception is that "said charge is error, because it expresses an opinion and assumes that a murder has been committed as alleged and that the evidence does point, with reasonable and moral certainty, to some one as the murderer, and that assumption is followed by the suggestive inquiry, 'Does it point to these defendants?' and said inquiry itself being a strong way of asserting that it does point to the defendants." There was no doubt whatever, from the evidence, that the deceased was murdered in Jasper county, in the manner and at the time charged in the indictment. There could be no question, under the evidence, about these matters. The proof was overwhelming, and there was no effort to show the contrary. While we think it best not to employ such interrogative expressions in charging the jury, yet we cannot say that an opinion is expressed, or an assumption made, by their use. And while this portion of the charge, standing alone, might be objectionable as fixing moral and reasonable certainty as all that would be necessary to produce the degree of mental conviction sufficient to authorize a verdict of guilty in this case, yet the error, if any, was cured when the court, in the

same connection, charged that, "If you have a reasonable doubt of their guilt, you should return a verdict of not guilty as to both," and that, "to authorize a conviction on circumstantial evidence, the proven facts must not only be consistent with the hypothesis claimed but must exclude every other reasonable hypothesis save that of the guilt of the accused"; and when the court had just charged that the presumption of innocence remains with the accused until the State overcomes it by satisfactory evidence and establishes their guilt upon each material allegation in the indictment beyond all reasonable doubt; and when, in closing his instructions to the jury, he charged, "If you believe from the evidence the defendants are not guilty, or if you have a reasonable doubt of their guilt, you would say, we, the jury, find the defendants not guilty."

3. The remaining grounds of the motion for new trial, which we shall notice specially, relate to the alleged newly discovered evidence. We do not think these grounds meritorious. So much thereof as relates to the testimony of Sallie Thurman, Leila Griggs and Harman Reeves might, by the exercise of proper diligence, have been obtained before the trial. The force and effect to be given to the testimony of Phillips and Whitten, granting that they were not impeached, depended entirely upon the credibility of the testimony of Sallie Thurman, and the State submitted much evidence to impeach her, as well as all the other witnesses giving the alleged newly discovered evidence. Therefore, from the character of this evidence, it is not at all probable that it would produce a different result upon another trial.

4. The evidence was sufficient to authorize the verdict, and the same having been approved by the trial judge, this court does not feel warranted in setting it aside.

*Judgment affirmed. All the Justices concurring.*