### 20569. BRITTAIN v. THE STATE.

Decided June 10, 1930.

*James W. Arnold,* for plaintiff in error.
*Henry H. West, solicitor-general,* contra.
■

LUKE, J. Carlton Brittain, colored, was convicted of assault with intent to rape on a white girl, and excepts to the overruling of his motion for a new trial which is based upon the general grounds only. Counsel for the defendant insists that the evidence did not sustain the verdict, because the defendant established an alibi and because no intent to rape was shown.

■ The female alleged to have been assaulted positively identified the prisoner, and the jury believed her. She testified: "He is the same one who pointed a pistol at me. He is in the court-room, that is him (pointing to the defendant). . . Yes, this is the same boy; I am positive of that." Witness Ross testified: "I got a good look at him under the light, and am sure that he is the same one." Witness Howland testified: "The boy we met [immediately after the alleged assault] had on overalls, cap, and overcoat. The boy Mr. Smith [the officer] caught was dressed the same way." In addition to the positive identification of the witnesses, and the clothes corresponding, the girl swore that the defendant had a pistol when he assaulted her, and the officer swore that the defendant had a pistol when he caught him less than two hours later. Furthermore, the alibi sought to be established by the defendant was by no means complete. Harden, a witness for the defendant swore: "I drive an ice-wagon for the Atlantic Ice & Coal Corporation. This boy worked with me regularly every day. The last day he worked for me was on a Friday; he left the wagon about 5:30 o'clock in the afternoon, and I never saw him again until just now." Adams, a witness for the defendant, swore that the defendant was in a picture show, came out to get a sandwich about 5:30 o'clock, and went back in the show and staid an hour and a half; that "he could not have been driving any ice-wagon around 4 o'clock. . . It was on a Friday night." The jury evidently believed that the defendant could not have been in the show and on the ice-wagon at the same time, and believed the witnesses who positively identified the defendant, which was their right. The burden was on the defendant to sustain his plea of alibi to the satisfaction of the jury, and this he failed to do. *Ware* v. *State,* 67 *Ga.* 349.

■ From the evidence adduced the jury were authorized to find that the defendant had the intent to commit the offense. The girl testified in part as follows: "I am 16 years old. On the night of

December 6, 1929, I was going down the left hand side of Chase street, going to the Chase-street night-school; it was about 15 minutes after seven o'clock. . . This defendant came from the right hand side of the street and got right in front of me and stopped, and asked me what my name was, and I told him, . . and asked me where I lived, and I told him I lived on Hill Crest Avenue, and he says, 'You do not live back over yonder,' and I told him I did', and he told me to go inside that gate over there. I refused to go. I asked him what for and he said, 'You are going.' I told him I wasn't, and he said somebody hurt his sister and he wanted me to go over there and see about her. He said I was going over there and see about it, if I didn't he would shoot my heart out, and I told him I was not going; and he says, 'Don't you holler either, if you do I'll shoot you.' He had a pistol in his hand. . . He pointed the pistol at me. . . The place he wanted me to go was a vacant lot about middle way between Prince Avenue and Boulevard. . . He had the pistol in his hand when he came across the street. . . He pointed it at me, at my heart, and told me if I didn't go into those gates he would shoot my heart out." The evidence further showed that when the defendant was arrested he told the officer that his name was Albert Cheney and that he lived in New Town; and a witness for the State testified that he had known the defendant for ten years and that "his name is Carlton Brittain; he lives on Hancock. . . I never heard of his living in New Town." The father of the victim testified that the mother of the defendant came to his house and offered him a check for $100 to settle the case.

In *Watkins* v. *State*, 68 *Ga*. 832, it was held: "Where a man hailed a woman walking along a pathway, and, holding something in his hand and saying he had plenty of money, told her to go into a gully, and on her retreating drew a pistol, and advancing upon her, ordered her to turn back, and she escaped by flight, a verdict of assault with intent to rape, approved by the presiding judge, will not be set aside as unsupported by evidence. . . The fact of proximity of a house and public road to the scene of the transaction may have rendered the effort fruitless, but did not render it guiltless." Where the evidence shows that a 16-year-old white girl is alone and unprotected on the street at night, and a colored boy of approximately the same age steps in front of her, stops,

asks her name and where she lives, points a pistol at her, and orders her to go into a vacant lot, and tells her that he will shoot her heart out if she doesn't go, and will shoot her if she hollers, the jury are authorized to find that he intended to rape her. Let it be borne in mind that the reference to a colored boy and a white girl has no relation to race prejudice; but the difference in race may always be considered by the jury in a case of this kind. As was said by Chief Justice Bleckley in the case of *Jackson* v. *State*, 91 *Ga.* 322, 330 (18 S. E. 132, 44 Am. St. R. 25): "The doctrine of the court's charge to the jury that, upon the question of intention, social customs founded on race differences, and the fact that the man was a negro and the girl a white person, might be taken into consideration, is undoubtedly correct. . . Not the faintest trace of a reason appears on which he could have founded any hope or expectation of consent. . . The difference of sex, to say nothing of the difference of race, would afford ample ground for directing attention to this element of the case." As said in *Ware* v. *State*, 67 *Ga.* 352, "What other motive could he have had? She was unknown to him. She was unprotected. . . The fiendish flame of lust alone could impel him to such acts. In seeking the motives of human conduct the jury need not stop where the proof ceases; inferences and deductions from human conduct are proper to be considered where they flow naturally from the facts proved. And such conduct as this points with reasonable, if not unerring certainty to the lawless intent he had in view." There was evidence to guide the jury in determining the question of intent as well as the other issues of fact; and the trial judge approved their verdict. In view of the purpose of the organization of this court, its limitations, and the numerous decisions that the jury are the arbiters on all issues and inferences of fact, we will not invade their province and usurp their function by determining the question of intent which the jury have already determined from the evidence. See *Williams* v. *State*, 17 *Ga. App.* 724 (88 S. E. 215); *Campbell* v. *State*, 100 *Ga.* 267 (28 S. E. 71); *Cosper* v. *State*, 13 *Ga. App.* 301 (3) (79 S. E. 94); *Cohen* v. *State*, 32 *Ga. App.* 551 (123 S. E. 917).

■ The evidence authorized the verdict, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Bloodworth, J., concur.*