PATRICK CARTER (a person of color,) plaintiff in error, vs. THE STATE OF GEORGIA, defendant in error.

35   263
108   479
108   481

*A negro man being found in the bed of a girl at an unseasonable hour of the night, and when she awakes he has his hand on her arm, holding her by the wrist, and escapes when she calls out to the family for help, may be convicted by the jury of an intent to commit a rape.*

Assault with Intent to Commit a Rape. In Cobb Superior Court. Tried before Judge MILNER. September Term, 1866.

The evidence for the State was as follows :

*Hepsey Holmes*—On the 17th of August, 1866, in the city of Marietta, Cobb county, witness found, in the night, on waking up, that some one was lying beside her, with his hand on her arm. She woke up her sister and told her of it. She then woke up her father to tell him, but the person escaped out of the window. She recognized the prisoner at the bar as the person. Her father caught hold of the prisoner, but could not hold him. This was about a half hour before day.

*Cross-examined*—Prisoner, or the person, did not do anything but take hold of her arm at the wrist. There was no light in the house. Witness could tell him by his features and by his voice. She had heard him speak to her father that evening. She did not see him distinctly enough to recognize him as the prisoner. She only thought it him from his voice, but is not certain.

*William Holmes*—Knew nothing of the assault until waked by his daughter, who called him and told him there was a negro in bed with her. He rushed to the window, and as the person was escaping, caught him by the arm, but could not hold him. He recognized the prisoner as the person. He thinks it was a little before day. The first he saw of the prisoner at the time was when he was escaping from the window, having his feet out of it.

*Cross-examined*—No black person was ever seen by wit-

ness to pass the cross street, except prisoner. He saw an abundance of black persons passing about the grocery near his house, and on the main street.

The evidence for the prisoner was as follows:

*Mrs. Mary McCown*—Prisoner lives with witness—sleeps in the basement, under her bed room. The door of the basement goes out just under the window at the head of her bed. Prisoner was in his room about ten o'clock on the night of the 17th of August. She knows, also, that he was at home on the night of the 16th of August; that he came to his room about ten o'clock at night on the 17th. She ordered him to bring a bucket of fresh water, which he did, and then went to his room. She was sick and up nearly all night, and heard prisoner talking with his wife. He was evidently under the influence of liquor. If he had come out of his door, witness would have known it. She believes he did not leave home that night, for his door makes a noise when opened, which she would have heard, and there was no other way for him to come out.

After a verdict of guilty, the prisoner's counsel moved for a new trial, because the verdict was contrary to law, contrary to evidence, and decidedly against the weight of the evidence.

A new trial was refused, and this is complained of as error.

KNIGHT, for plaintiff in error.

PHILLIPS, Solicitor General, for the State.

LUMPKIN, C. J.

That the prisoner is guilty of an assault, is clear; for he was in the bed, holding the arm of the girl by her wrist, without her consent or permission, and, as she called for help so soon as she awoke and found him in that position, we may say forcibly and against her will. And the only

question is, the intent with which it was done; and this invites a further inquiry, viz., how far the accused must go before this intent is established? Here it is certain, from the position of the parties, that the negro intended sexual connexion, forcibly or by consent. This was his intent. There is not a particle of proof to show that he expected it to take place by the consent of the girl. Was it not legally inferable that the intent was to gratify his lust forcibly? There is no evidence of any amorous manipulation with her person, but when she awoke, he had her by the wrist. Were the jury warranted in inferring, from the evidence, that the intent was to commit a rape? I ask, how far should one go to consummate this crime? If a man is found in the bed of a woman at an unseasonable hour of the night, and wakes her up by demonstrations such as were proven in this case, may he not be convicted of this *intent* as well as any other? and is it not more likely to be true than any other? As to the proof of the *alibi*, we do not think it amounts to much.

Judgment affirmed.