JACKSON *v.* THE STATE.

1. Where a man under the incitement of lust, and with the intention of gratifying it by force, enters the bedroom of a virtuous woman at a late hour in the night and gets upon the bed in which she is sleeping, within reach of her person, for the purpose of ravishing her, he commits an assault upon her, although he may not actually touch her, being prevented from so doing by her outcry and by the interposition of an occupant of the adjoining room.

2. Social customs founded on race difference, and the fact that there was difference of race between the accused and the woman alleged to have been assaulted, may be considered by the jury upon the question of whether the assault was committed with intent to rape,

the evidence showing that the room in which the woman was sleeping was entered late at night, and there being nothing to indicate that the entry was by permission or due to any encouragement held out by her upon which to found a hope or expectation of consent.

3. The charge of the court complained of did not trench upon the province of the jury, and was free from substantial error.

4. The evidence was barely sufficient to uphold the verdict. It made a case on which the jury might well have doubted whether the accused intended to ravish, but the verdict negatives the existence of any reasonable doubt, and the trial judge was satisfied with the finding.

March 3, 1893.

Before Judge BOWER.　Decatur superior court.　May term, 1892.

This was a conviction of assault with intent to rape. A new trial was denied, and the defendant excepted. There was testimony to the effect, that he went in the evening to the house of Hopson on an errand, finished his business and started off, and Hopson thought he was gone. Hopson and his family retired to bed, his daughter Alice, with her younger sister, sleeping in another room. About twelve o'clock Alice was waked by the defendant calling her name, and found him sitting on the foot of her bed; she sprang up calling her father; the defendant also got off the bed, touching or catching hold of her foot as he did so ; the father responded to the call, stumbling in the darkness over chairs, etc., and as he came to the room the defendant jerked down the door and ran away. The grounds for new trial are, that the verdict is contrary to law and evidence, and that the court erred in charging unqualifiedly that " juries are the judges of the law and facts in criminal cases," and in charging as follows :

" It is not necessary for the State to show you that he expressed in so many words any such intention, to enable you to arrive at the fact that he did so intend. The intention may be gathered from the circumstances

of the case as proved before you, and the conditions, race and conduct of the parties. The reasonable experience of upright and intelligent jurors of the subject before them, should be taken in consideration, to enable the jury to determine what was the intention of the party, the defendant. Verdicts of juries are reached by the jury reasoning and discussing the evidence by regular steps; you take in consideration some essential fact of the case, some essential requisite of the crime, and you discuss that from the evidence, and you come to a conclusion on that; you will take up every other essential element of the offence, and consider them in the same way. For instance, in considering this case one of the essential elements is, was it the defendant that was there. You see how unnecessary it would be to go into the other features of the case, unless you come to the conclusion that it was the defendant that was there. If it was not the defendant there, it would not be necessary to go further into the discussion of the case, because it would not matter what was done if the defendant wasn't there, and you should find him not guilty. Because, if the defendant did not do it, he is not concerned, and you could not find him guilty. So that should be one part of the offence you should discuss first, whether the defendant was there or not. In doing so you will take into consideration all the evidence in the case. The presumption of law always is in favor of testimony; the law presumes that witnesses will speak the truth, that whatever they speak is the truth, unless something appears in the testimony to the contrary. The natural presumption of law is that witnesses speak the truth. So in determining the question whether he was there or not, you will see what the evidence was. See whether or not one or more of the witnesses saw the defendant there; whether or not they recognized him; whether or not they heard his voice; whether or not they recog-

nized that; how well acquainted they were with his
voice; how close they were; how well acquainted they
were with his appearance, shape, form, size, and his
voice; and as reasonable men, from all the evidence,
determine whether or not you believe from all the evi-
dence, beyond a reasonable doubt, whether the defend-
ant was there or not.   If you have a reasonable doubt
as to whether it was the defendant that was there, after
considering the testimony, you will find your verdict in
favor of the defendant at once.   If you should come to
the conclusion beyond a reasonable doubt that the de-
fendant was there, you will then discuss other questions
in the case; you will take the evidence of his conduct
on that occasion; see what he done, and then see with
what intent he done it.   If you believe that the defend-
ant went into the room where the young girl was, and
called her name twice, and sat down upon the bed
where she was sleeping, and caught hold of her foot or
touched it, you can gather from these facts what the in-
tention was.   You have the right to consider who the
parties were; consider whether one was a black person
and the other a white person.   You have a perfect right
to take in consideration the difference in the races, so as
to see what the intention of the parties was.   To illus-
trate how necessary that would be for you to consider,
suppose it had been her father that walked in there and
called her twice and caught or touched her foot, from
these circumstances what would you have inferred his
intention to be?   The necessary and most reasonable
inference would be, that he went and woke up the child
to tell her something.   It would be an unreasonable in-
ference that he went there to commit rape upon his
young daughter.   Therefore I say you have the right to
consider who the parties were, what could have been
his intent; as reasonable men, knowing the customs of
society in this country, and the contact of the races in

this country, you have the right to inquire in your minds what his business could have been.   It is insisted by defendant's counsel that it might have been to have some other business, some little private chat, perhaps to entertain her while in her bedroom in bed and in her night-clothes, and he with his clothes on, one a black man and the other a white girl.   Look, therefore, into the customs of society and see whether that is customary in this country, for a black man to go in a white girl's room to have a little chat at twelve o'clock at night, she in her bed with her night-clothes on, and he dressed. You have the right to look to the customs of the country, what contact the two races usually have with each other, in arriving at the intent of the defendant in going to the girl's room, if you should believe he went there. If you conclude from the customs of the country and the contact of the two races, it is customary for black men of this defendant's age and size to visit white girls, and you think it reasonable that he should have gone into the bedroom of a girl of her age and size for the purpose of having a pleasant chat, you should find the defendant not guilty, because that would be no crime, if that was the reason he went there.   It is insisted by the defendant's counsel that he went there to have sexual intercourse with the little girl, and with the consent of the little girl.   Look into that carefully and see whether or not that is the true version of this case; take all of the circumstances into consideration.   If you believe from the circumstances and evidence that it was his intention to have intercourse with the girl by her consent, and he did not intend to use any force at all, you should find the defendant not guilty; but in arriving at that conclusion, consider the testimony and see what the little girl done, whether any act or word of hers would carry that inference.   When her name was called, did she by any act or word invite the party?   Did she

make any movement towards inviting the defendant? Is there any proof in the case to show that she was a girl of that character? Is there any evidence in the case to show that he had any reason to suspect that she would consent to it? Is it such a customary thing that a black man has intercourse with white girls, that you could look upon it as a natural thing in the country? Look to all these questions, and if you believe that was his intention, that he would insist a little and the girl would consent, and that he would have intercourse with her, and did not intend to use any force at all, you should find the defendant not guilty. But look to the evidence to see what is the truth of the case. It is insisted that he may have gone in there to get something to eat; instead of going to the girl's mother or father, he went to the little girl's bedroom. Look to the evidence to see whether or not he had been offered supper before that time, whether or not he had not been given peaches and offered supper. Seé whether or not he went in that time of night to get anything to eat or not. If he did, you should find him not guilty. See whether that was supper-time or not, and whether it is usual for a black man to go into a white girl's room at twelve o'clock at night for the purpose of asking for something to eat. If it is, and that was his intention, to get something to eat, you should find him not guilty, because he is not guilty of any crime if that was the object of his visit to the room. I only mention these things as illustrations to show you how to arrive at the intention of the parties. So you will take the case and look through it carefully, and determine first whether the defendant was there at all or not. On that subject you will take into consideration all of the evidence; look to the evidence of the peaches and plow being left on the fence, and all the other evidence in the case bearing on the subject, and determine whether he was there or not. If you

should find that he was there, then consider his conduct as proved; you will look to all the circumstances and evidence in the case to gather what his intention was; and if you doubt that his intention was to commit the offence of rape, you should find him not guilty. If you believe from the evidence that that was his intention, to go in there and commit rape, you should just as unhesitatingly find him guilty. That intention must be gathered from all of the circumstances in this case. It is contended by the defendant's counsel that the old man as he heard his daughter cry, stumbled over some chairs and ran up in the chimney-corner, and was so excited he did not know what occurred. You will take all these things into consideration, so as to see what the truth of this case was. If you believe he was so excited he did not know what he was talking about, could not tell the man, could not say who he was, you must consider it in that light; you can also look to it in this light: whether or not his daughter's cries were so exciting and frantic that it aroused him to the highest pitch of excitement, that he rushed in hurriedly to see what was the matter with her; take both views into consideration. You can apply your own personal experiences, if you have any. What effect would it have upon you, gentlemen,—what effect would it have upon you if you were to hear one of your daughters in her bedroom at that hour of the night? Consider it in the light of human experience; see what sort of cries she really made, and consider whether such cries would so excite a man as to cause him to run over chairs and up into chimney-corners, as that he could not tell a man when he saw him, and tell who he was when he got within seven feet of him, if you believe that evidence of the father. Take the whole case, consider it, and see what the truth is, the object of the jury being to reach the truth of the case."

O. G. GURLEY, by brief, for plaintiff in error.

W. N. SPENCE, solicitor-general, by brief, *contra.*

BLECKLEY, Chief Justice.

1. As defined by the code, §4357, an assault is an attempt to commit a violent injury on the person of another. Where a rape is intended, the injury contemplated can be inflicted only by actual contact of the sexual organs of the man with those of the woman. In order for an assault with intent to rape to be committed, is it necessary that the persons of the two should be in such proximity as that the organs of the male shall be within what may be termed "striking distance" of the organs of the female? Or, is the virile member to be treated as a gun which is harmless until brought within "carrying distance" of the target? We think not. It seems to us that where rape is intended, and the would-be ravisher, with the purpose of presently executing his intention, enters the bedroom of the woman when she is asleep, and mounts upon her bed, thus bringing himself near enough to seize at will her person or some part of it, the attempt to commit a violent injury upon her is complete. Certainly, when matters have proceeded thus far, she would be in imminent danger of being ravished. Nothing but a change of intention on the part of her assailant, the interference of some third person, or her own resistance, would be likely to shield her. No actual touching of the woman's person is necessary to complete the assault. There need be nothing more than the intention to accomplish sexual intercourse presently by force, and the active prosecution of that intention until a situation of immediate, present danger to the woman is produced. If, in the case before us, the accused, under the excitement of lust and with the intention of gratifying it by force, entered the bedroom of the girl near midnight

and got upon the bed in which she was sleeping, within reach of her person, for the purpose of ravishing her, he committed an assault upon her, even if he did not actually touch her except casually and incidentally whilst she was in the act of leaping out of bed to escape from him, or even if he did not touch her at all, he being prevented from consummating his design by her outcry and by the intervention of her father who occupied an adjoining room. Under the evidence in the record, the acts done by the accused, if they were accompanied with an intention to ravish, were quite sufficient to constitute an assault.

2. The doctrine of the court's charge to the jury that, upon the question of intention, social customs founded on race differences, and the fact that the man was a negro and the girl a white person, might be taken into consideration, is undoubtedly correct. There was nothing in the evidence to indicate that the girl was not virtuous, or that she had held out any encouragement to this negro, or to any other person, white or black, to enter her bedroom for illicit intercourse. Not the faintest trace of a reason appears on which he could have founded any hope or expectation of consent. Surely it was legitimate for the jury to note any departure from the customary modes of visiting which was involved in a nocturnal entrance by a negro man into the bedroom of a white woman during the hours usually devoted to sleep. The difference of sex, to say nothing of the difference of race, would afford ample ground for directing attention to this element of the case.

3. The charge of the court complained of was substantially correct throughout, and no part of it trenched unduly on the province of the jury. We find nothing in it which challenges more than mere verbal criticism.

4. We confess to a serious doubt upon our own minds

as to whether the accused really intended to commit rape. Two facts strongly indicate the contrary; one of these being that he knew the father of the girl occupied an adjoining room and was near enough at hand to protect her; and the other being that, instead of seizing her while asleep, he paused upon the bed and called her by name. Why he should have done this, if his mind was made up to violate her person, we are at some loss to understand or even to conjecture. But the workings of a criminal mind, especially while under the dominion of brutal passion, are often mysterious. A bad man who has procured his own consent to commit a great outrage will frequently take great risks and prosecute his criminal enterprise in the most foolish manner. Desperation and folly are close relatives, and are found not seldom in each other's company. Guilt is shrewd only when it is timid; when it becomes bold and reckless, it is in no mood to consult discretion or to heed the dictates of prudence. The jury had a right to interpret the prisoner's conduct in the light of this trait of vicious human nature, and so doing, there was no violation of sound logic in reaching the conclusion at which they arrived. They might well have doubted, as we do, whether there was an intention to ravish, but we cannot say that twelve honest, fair-minded men might not be free from any reasonable doubt on the subject. We cannot, therefore, do otherwise than accept the verdict as negativing the existence of any such doubt in the jury-box, the presiding judge having approved the finding. Had we been present and witnessed the whole trial, we might have been no less satisfied than he was. Our conclusion is that the evidence was sufficient, though barely sufficient, to uphold the verdict; and that in denying a new trial no error was committed.

*Judgment affirmed.*