DORSEY *v.* THE STATE.

'108  477|
|124  786|
|124  787|

1. In order to authorize a conviction for the offense of assault with intent to rape, the evidence must show beyond all reasonable doubt, (1) an assault, (2) an intent to have carnal knowledge of the female, and (3) a purpose to carry into effect this intent with force and against the consent of the female. If any of these three elements is lacking, the offense is not made out.

2. Difference in race and social standing may properly be considered in determining, in cases of the character above referred to, whether there was a purpose to carry into effect the intent to have carnal knowledge of the female forcibly and against her will.

3. The evidence in the present case did not authorize a conviction.

LUMPKIN, P. J., and LITTLE, J., dissenting. Evidence warranting a jury in finding that a negro man, who had concealed himself by the side of a public road at a lonely point thereon and at a late hour in the afternoon, suddenly sprang up with a pistol in his hand and rudely accosted an unprotected white woman, who was passing the place, with the words, "I

have got you where I have wanted you for a long time," whereupon she immediately turned and fled and he hotly pursued her until she came within reach of aid, was sufficient to support a verdict of assault with intent to rape ; and where such a verdict has been returned upon evidence of this character and approved by the trial judge, the Supreme Court ought not to set it aside.

Submitted April 17, — Decided July 26, 1899.

Indictment for assault with intent to rape. Before Judge Harris. Carroll superior court. October term, 1898.

*Reese & Gordon*, for plaintiff in error.
*T. A. Atkinson, solicitor-general*, and *W. D. Hamrick*, contra.

COBB, J. The accused was convicted of an assualt with intent to rape, and made a motion for a new trial, based on the general grounds and newly discovered evidence. The motion having been overruled, he excepted. Taking the evidence in the record most strongly against the accused, it warranted a finding of the following facts: Mrs. Vines, a white woman, was walking alone along a public road in the country, leading from the home of her husband to that of her father-in-law, at a late hour in the afternoon. When she had reached a lonely point on the road, not within view of any dwelling, the accused, a negro, suddenly sprang up from behind some bushes at the side of the road, with a pistol in his hand, and said to Mrs. Vines: "I have got you where I have wanted you for a long time." He was then some 20 or 25 yards distant from her. She immediately turned and fled, and the accused pursued her for a distance of 70 to 75 yards. He did not relinquish his pursuit until she came within sight of her husband, who was at work in a field near the roadside. The accused then turned and ran off through the woods. He did not get nearer to Mrs. Vines than 10 or 15 yards, nor did he make any attempt to shoot or otherwise injure her with the pistol.

We do not think that the evidence warranted a conviction of the crime charged in the indictment. To make out a case of assault with intent to rape it is absolutely essential that the evidence should show beyond a reasonable doubt, (1) an assault, (2) an intent to have carnal knowledge of the female, and (3) a purpose to carry into effect this intent with force and

against the consent of the female. If any one of these three elements is lacking, the offense is not made out. To constitute an assault no actual injury need be shown, it being only necessary to show an intention to commit an injury, coupled with an apparent ability to do so. *Thomas* v. *State*, 99 *Ga.* 38. Do the facts of this case bring it within the rule above stated? They show, of course, an apparent ability to commit an injury upon the female, although the accused never got within striking distance, but it is doubtful if the bare fact that the accused ran after but did not overtake her when he most probably could have done so, coupled with the language that he used, is sufficient to constitute an assault. True he had a pistol in his hand, but it was never pointed at the female, nor is there the slightest circumstance, save the bare fact that he had the pistol exposed, to show an intention to use it. Without going more fully into this branch of the case, we content ourselves with saying that it is doubtful if an assault has been proved. The main point upon which we place our judgment is, that the evidence does not show an intention on the part of the accused to have carnal knowledge of Mrs. Vines forcibly and against her will. An intention to do any one of three things might be inferred from this evidence: rob, frighten, or rape; or there might have been some other motive for his conduct, difficult to conjecture. It is not sufficient that the intent to do one may as likely be presumed as an intention to commit the others; but the question is: Is the intention to commit the crime charged "more likely to be true than any other?" *Carter* v. *State*, 35 *Ga.* 263. Now can it be said that this evidence points with a greater degree of certainty to an intention to commit rape than to *any* other act? The female was walking along the road in the daytime; her husband was not more than one hundred yards away, though it does not appear that the accused knew this; the accused was concealed behind some bushes along the side of the road. Instead of waiting until she approached near enough for him to place his hands upon her and detain her and stop any outcries she might make, he emerges from behind the bushes when she gets within twenty or twenty-five yards of him. Is this the conduct of a

man who intends to commit a rape? He had a pistol in his hand, but showed no intention of using it. He said he had her where he had wanted her for a long time. He did not advance upon her until she turned to run. He chased her seventy-five yards and never came closer to her than ten or fifteen steps. Surely, if urged on by a desire to have carnal knowledge, and knowing full well that this purpose, if accomplished at all, must be accomplished speedily, he could have overtaken her before she emerged from the woods. If he did not desire to commit this offense, what was his desire? We do not know. Possibly to rob, possibly to frighten, possibly something else; but we are not willing to say that his conduct showed, beyond a reasonable doubt, that there was more of an intention to commit one than the other. And if it points to one with as great a degree of certainty as another, that which is the least heinous will be presumed to have been intended. This follows logically from the presumption of innocence which the law raises in favor of a person charged with crime.

The fact that the alleged assailant is a negro may, in cases like the one now under consideration, be properly considered for one purpose, and that is, to rebut any presumption that might otherwise arise in favor of the accused that his intention was to obtain the consent of the female, upon failure of which he would abandon his purpose to have sexual intercourse with her. Under the conditions surrounding the two races in this State, when in the trial of a person charged with assault with intent to commit a rape the only theory of the defense is that the accused intended to have sexual intercourse but it was his purpose to desist if he met with opposition, if the assailant is a negro and the female is a white woman, such a theory will avail nothing, unless the evidence shows either that the female was not a virtuous woman, or that she had in some way encouraged the approaches of her assailant. The vital question, however, to be considered is whether, under the circumstances of the particular case, a negro could reasonably be presumed to have thought that a white woman would consent to his lustful embraces; and no such inference will ever arise in his favor, unless the circumstances are such that no other·

inference can be possibly drawn. The ruling in the case of *Jackson* v. *State*, 91 *Ga.* 322, is to the above effect, but it goes no farther. No decision of this court has ever been made in which it was held that evidence of the character relied on for a conviction in the present case was sufficient to convict one of the offense for which the accused was charged. On the contrary the decisions heretofore made tend to establish an opposite conclusion. In the case of *Carter* v. *State*, 35 *Ga.* 263, a negro was found in bed with a white girl, and when she awakened he had his hand on her arm. That this evidence makes a much stronger case than the present one can not be doubted. In the *Ware* case, 67 *Ga.* 349, a girl twelve years of age was on her way late in the evening to a neighbor's house, when suddenly the accused, who was a grown man and a stranger, rushed out from the woods, demanded to know her name and business, took hold of her hand, squeezed it, clasped his arm around her waist, raised her from the ground, and started to bear her to the woods, threatening her life; and when she threatened him with her father, he suddenly dropped her on the ground and fled. The most reasonable inference from such conduct was that the accused intended to commit a rape, and every other reasonable hypothesis is excluded. In the *Jackson* case, supra, the accused was found by a girl about 12 o'clock at night sitting on her bed, she having been awakened by his calling her name. She sprang up calling her father, when the accused got off of her bed, touching or catching hold of her foot as he did so. Her father was sleeping in a room near by. Grave doubts were expressed by Chief Justice Bleckley in the opinion in that case as to whether the evidence was sufficient to uphold the verdict, but the conclusion was finally reached that it was. We are also extremely doubtful as to the correctness of this decision, but that an *intent* to *ravish* was more certainly indicated than in the present case can not be questioned. The case of *Sharpe* v. *State*, 48 *Ga.* 16, is very similar to the *Carter* case, supra, and if anything stronger than that case. In *Joice* v. *State*, 53 *Ga.* 50, the accused went into the kitchen where a female was washing dishes. As she started out of the door, he blew out the light and caught her around

the waist, but did not pull her to him.   She called her father, who came.   The kitchen was about thirty yards from the house. A conviction for assault with intent to rape was set aside on the ground that no intention to commit the offense had been shown.   It does not appear to what race either the accused or the female belonged.   The conclusion reached, we think, was manifestly right; but if a jury could not find from that evidence that there was an intention to rape, without regard to the race of the participants, it is difficult to see how a conviction founded on such evidence as the present record discloses can be upheld.   The case of *Johnson* y. *State*, 63 *Ga.* 355, is the strongest case on this line in our reports.   In that case Sarah Cole was awakened at night by having some one place his hand over her mouth.   She threw up her hand and felt the kinky hair of a negro, when he grabbed her by the feet and pulled her to the door.   She screamed as he ran.   Chief Justice Warner in the opinion said: "There is no evidence in the record that we can discover, either by the defendant's confessions or otherwise, that he attempted to have carnal knowledge of Sarah Cole, as alleged in the indictment."   Surely if that case be a precedent, the conviction in the present case ought not to stand.   The case of *Jackson* v. *State*, supra, was followed in *Darden* v. *State*, 97 *Ga.* 407.   Darden was a negro, and the person alleged to have been assaulted was a white girl of twenty years.   She was sleeping in her bedroom and was awakened about midnight by the cover moving on her bed.   She did not rise immediately, and the cover moved twice more, when she screamed for her father.   When she did this, the accused jumped out of the window and ran away.   The room was dark.   That the purpose of the accused in that case was to commit the offense for which he was convicted can hardly be doubted.   In *Gaskin* v. *State*, 105 *Ga.* 631, a negro boy sixteen or seventeen years of age concealed himself at night under the bed of a white girl about fourteen years old.   He was discovered in this position by the girl and her mother, and fled through a window and escaped.   It was held that the element of assault was not proved, as no overt act amounting to an assault was shown; and that the evidence was not sufficient to warrant a finding

that the accused had any intention of committing a rape upon the girl.    In the opinion, it is said, "There should be no reasonable doubt as to the specific criminal intent of the accused, from the facts and circumstances proven."    If it can not be said to be the intention of a negro boy who goes in the room of a white girl and conceals himself under her bed, and when discovered makes his escape, to commit a rape upon her, we can not understand how the facts of the present case would justify a conviction for this offense.

We have been able to find but one decision in the United States where a conviction for assault with intent to commit a rape was upheld under facts similar to those disclosed by the record in the present case.    State v. Neely, 74 N. C. 425.    That decision was rendered by a bare majority of the court, two of the judges dissenting.    Rodman, J., in his dissenting opinion admits that under a prior decision of that court there was evidence from which the jury could have convicted the accused of a simple assault; but insists that there was no evidence of intent to commit the offense charged.    We quote the following extract from that opinion as being peculiarly appropriate to our discussion:    "But the method of reasoning [of the majority] is misleading and objectionable on principle.    It assumes that the prisoner is a brute, or so like a brute that it is safe to reason from the one to the other; that he is governed by brutish, and, in his case, vicious passions unrestrained by reason or a moral sense.    The assumption is unreasonable and unjust.    .    .    Assume, as the opinion of the court does, that the inquiry as to intent is to be conducted upon an analogy from the intents of brutes, you treat him worse than a brute, because what would not be vicious or criminal in a brute is vicious and criminal in him, being a man.    When you assume him to be a brute, you assume him to be one of vicious properties.    If that be true, what need of court and jury?    The prisoner is not only feræ naturæ but caput lupinam whom any one may destroy without legal ceremony.    The evidence of the prisoner's intent is circumstantial; the circumstances being the pursuit, and its abandonment when he got in sight of White's house.    It is the admitted rule in such cases that if there be

any reasonable hypothesis upon which the circumstances are consistent with the prisoner's innocence, the judge should direct an acquittal, for in such cases there is no positive proof of guilt. The particular criminal intent charged must be proved. It will not do to prove that the prisoner had that intent or some other, although the other may have been criminal; and especially if the other, although immoral, was not crimimal." This decision was never followed by the Supreme Court of North Carolina, and was expressly overruled in the case of Massey *v.* State, 86 N. C. 658, where the dissenting opinion from which the above extract is taken was approved by a unanimous bench. In the case of House *v.* State, 9 Tex. 53, a conviction upon what seems to us to be stronger evidence than that of the present case was set aside; and that too in a State where the social status of the negro is the same as with us. It appears from the evidence in that case that Miss Coulter, a white woman, was washing clothes in a wash-room, and that about half past five o'clock in the morning she went into the yard to get a bucket of water. Just as she dipped up the water and turned round she saw the accused, a negro, standing at the corner of the kitchen, which was in the same building as the wash-room. He came straight towards her until he got up close enough to take hold of her, when he reached out both hands as though he would take her in his arms. The woman screamed, and accused went away. He did not put his hands on her or say anything during the occurrence above detailed. It was ascertained that the window of the wash-room had been raised and a stick placed under it before the meeting of the parties. It was held that the offense was not made out. In Jones *v.* State, 18 Tex. App. 485, it appeared that a white girl was walking from one village to another through the country. She passed a mill where the accused, a negro, was working. After passing the mill she looked back and discovered the negro in her wake. The accused came up with her, caught her by the heels, seized her with one hand by the throat, and threw her to the ground. She screamed out, and he seized her by the throat with both hands, choking her violently, and placed his knee on her breast. After the girl had screamed out and the accused

had choked her, he jumped up and ran off, without having made any attempt to raise the girl's clothing or to do anything but throw her down and choke her. Notwithstanding the difference in race between the parties, the court held that "each and every fact is consistent with the commission of an aggravated assault and battery." See also Burney v. State, 21 Tex. App. 565; Thomas v. State, 16 Tex. App. 535. In Green v. State, 67 Miss. 356, the evidence showed that the prosecutrix was riding in the daytime alone on horseback along a country road. When she reached a place where the road crossed the railroad she noticed the accused, a negro man, standing on the crossing. After riding two or three hundred yards beyond the crossing, she noticed that the accused was following her on foot, evidently having traveled very briskly, and she had ridden but very little farther when he came up behind her and caught her riding-skirt. She immediately uttered an outcry and urged her horse forward, when the accused, without having spoken a word, fled in another direction. It was ruled that "It is conjecture, and not an inference reasonably drawn from the evidence that the defendant intended a rape rather than robbery or murder. Mere probability of guilt of a particular crime, and that, too, springing more from instinct than from facts proved, can not support a conviction." In this case you have a lonely country road, an unprotected white female, and a negro, not only pursuing but actually coming up with the woman and putting his hands on her riding-skirt. See also State v. Donovan, 61 Iowa, 369; Hairston v. Com., 32 S. E. (W. Va.) 797. Cases might be multiplied, but of course each case must rest upon its peculiar facts. Suffice it to say that we have found nowhere in the books, with the single exception of the North Carolina case, supra, any case which, in our opinion, is authority for upholding the conviction in the present case. We can not bring our minds to the conclusion that the evidence in the present case showed, beyond all reasonable doubt, that the accused intended to have carnal knowledge of Mrs. Vines forcibly and against her will. One who frightens and chases along the public road an unprotected female should meet with proper punishment for such conduct, but we can

not say that such conduct alone authorizes a conviction of the offense with which the accused was charged in the present case.

*Judgment reversed. All the Justices concurring, except Lumpkin, P. J., and Little, J., who dissented.*

LUMPKIN, P. J.    The naked question is whether or not, upon the state of facts set forth at the beginning of the above opinion, the verdict should be upheld.    Beyond doubt the evidence was sufficient to establish the commission by the accused of an assault of some kind.    *Thomas v. State,* 99 *Ga.* 38, and authorities there cited.    In that case, which is in some respects similar to the one now before us, it was held : "Where one raised a stick in a striking position and ran toward another person fifty yards distant, at the same time threatening to beat that person, and the latter fled, whereupon the pursuer, after getting within about half the above-mentioned distance of the pursued, abandoned the pursuit, it was, under all the circumstances, a question for determination by a jury whether or not there was an intention to strike, and, if so, whether or not it could probably have been accomplished if the pursuit had been continued.    If there was such an intention and an apparent ability to carry it into effect, the offense of an assault was committed, though there may not have been an actual ability to inflict the battery intended.    If there was no intention to strike at all, or if there was no real or apparent ability to inflict a battery, there was no assault."    The offense there charged was a simple assault, and the court in effect ruled that the intention to beat was inferable from evidence showing that a threat was made by the accused to the prosecutrix in the following language:    "Confound your soul, if you don't like what I said, I will take this to your head,"— he at the same time using an oath, raising a stick, and starting towards her.    See page 41.    There was nothing in the present case to indicate an intention on the part of the accused to beat Mrs. Vines.    He made no threat or effort to do so, nor was there anything in his conduct tending to show that he had any such purpose.    It could not have been an assault with intent to murder; for if this had been the object of the accused, he would unquestionably have used the pistol.    It

was something more than a bare assault, or wicked purpose to frighten; or the accused would scarcely have persisted in the pursuit of Mrs. Vines until it became evident that assistance was at hand. It must, then, have been either an assault with intent to rob or an assault with intent to rape. There is scarcely any reason for even supposing that the object which the accused had in view was robbery. He did not demand of her money or property of any kind. Neither his words nor his acts were those to be naturally expected of a highwayman seeking plunder. Moreover, the theory that a robbery was contemplated is, we think, effectually negatived by the character of the language used by him. In the case of *Thomas* v. *State*, cited supra, this court was of the opinion that the threat to beat indicated an intention to beat. The remark addressed to Mrs. Vines is of the very greatest importance in arriving at the intention of her assailant. His precise words were: "I have got you where I have wanted you for a long time." What could such a remark mean, addressed by a negro to an unprotected white woman, at the time and place and under the circumstances above detailed? The answer to this question necessarily embraced in the verdict is that the accused meant to ravish. Is that answer so unreasonable that a reviewing court can properly say it was unwarranted? We can not, of course, know with absolute certainty what the accused did mean; but after careful and thorough deliberation we are not prepared to say that the jury were not justified in finding that he desired to have sexual intercourse with Mrs. Vines and intended by the remark addressed to her to express the idea that he at last had her in his power and at his mercy, with a view to the accomplishment of this end. We do not feel justified in saying that the jury could not reasonably conclude that such was the true import of the words he used. If he meditated having carnal knowledge of her person, he could not possibly have believed she would consent; and therefore it must have been his purpose to accomplish his design forcibly and against her will. When we take into consideration the lonely place, the approaching nightfall, the fact that assistance was apparently remote, and also the immeasurable difference in the social

standing of these parties, we can not say the jury erred in their conclusion that rape was intended.

The case of *Ware* v. *State*, 67 *Ga.* 349, is in many respects similar to that now under consideration, though there the evidence of the lustful intention of the accused was more apparent. Still, there was no positive evidence of an intention to rape. In commenting upon the question of the intent of the accused in that case, Justice Speer said (page 352): "In seeking the motives of human conduct, the jury need not stop where the proof ceases; inferences and deductions from human conduct are proper to be considered where they flow naturally from the facts proved. And such conduct as this points with reasonable, if not with unerring, certainty to the lawless intent he had in view." And see, also, *Jackson* v. *State*, 91 *Ga.* 322, where a conviction of assault with intent to rape was upheld, although it was in the opinion of this court, after long and anxious consideration, "a case on which the jury might well have doubted whether the accused intended to ravish," but in which the conclusion was finally reached that there was sufficient evidence to sustain a finding that his purpose was to commit a rape. This was a case, too, in which was distinctly recognized the doctrine that difference in race and social standing might be considered in arriving at the intention of the accused. This court can not, consistently with the purposes of its organization or with the precedents almost without number which it has itself established, set aside verdicts merely because there may be some ground for doubting their correctness. It is possible that Mrs. Vines may have been mistaken as to the identity of her assailant, and in this connection the jury, had they seen proper so to do, might have given more weight to the testimony relating to the defense of alibi, which was set up. Again, they might have had a doubt as to the intention with which the assault was made. They were, however, the exclusive and legally-appointed judges of all the issues and inferences of fact involved in the case, and this court has no authority to usurp their function. Granting the existence of room for doubt on the questions both of identity and intention, we do not think this verdict ought to be disturbed. As a pointed instance among the hundreds which could be cited of the steadfastness

with which this court has adhered to its duty of declining to interfere with the findings of juries supported by evidence and approved by the trial judges, we quote from Chief Justice Bleckley in *R. & D. R. Co.* v. *Howard,* 79 *Ga.* 54, 55. After intimating his own view of what the verdict in that case should have been, he said : "The jury have found to the contrary, and the court below, who was near to them, nearer to the case than we are, upheld their finding; and because we are constrained by the law (for all the members of the court share in the doubt) we affirm the judgment. As matter of stern legal duty, this court yields its strong doubts of the correctness of the verdict." The verdict in the present case comes here with the sanction of the trial judge's approval, and there was, in our judgment, enough evidence to warrant it. The opinion of the court, delivered by Mr. Justice Cobb, is able and strong; but it does not convince us that the majority have reached the correct conclusion. None of the cases cited by him, whether decided by this court or in other jurisdictions, can be fairly regarded as binding authority in the case before us. They only resemble it in greater or less degree, and the reasoning from them is merely by analogy. Every case must, at last, be considered and determined upon its own facts. We venture, without fear of contradiction, the assertion that if a statement of the facts proved in this case should be made to one thousand upright, intelligent, and fair-minded citizens of this State, taking them as they came, at least nine hundred of them would say they believed the accused intended to rape Mrs. Vines. Indeed, this is the very first idea that would occur to almost any mind upon being informed of what he did. It does not, of course, follow that the accused ought to have been convicted; but as he was convicted, how can a verdict which accords with common experience and with the view which would naturally be entertained of it by good men be so unreasonable as to require a reviewing court to set it aside? We are strengthened in our dissent from the judgment of the court by the fact that this particular verdict was upheld by one of the ablest, best, and most fearless judges who ever sat upon the bench of this or any other State. The finding of the jury was satisfactory to him, and we honestly believe it ought to be to this court.