### 20700.  LITTLE v. THE STATE.

DECIDED OCTOBER 8, 1930.

*J. D. Hughes,* for plaintiff in error.
*Charles H. Garrett, solicitor-general,* contra.

LUKE, J.  The defendant, Richard Little, was found guilty of an assault with intent to rape.  His exception is to the judgment overruling his motion for a new trial, based upon the usual general grounds and four special grounds.

Miss Ruby Tanner testified: that on the night of October 15, 1928, she and a party of six, composed of herself and three other young ladies and two young men, were returning from Central City Park, in Macon, Ga.; that two of the party were about a hundred yards in front of witness and Miss Bessie Williams, and the other couple were "a good piece behind us;" that when witness and Miss Williams got opposite Christ Church on Walnut street, a negro caught witness around her waist with his left hand and above her knee with his right hand; that she could not swear that the hand above her knee was under her garments; that Miss Williams ran up the street screaming and the negro held witness a little while and turned her loose and ran across the street; that the defendant was the same negro who had hold of her; that witness had noticed

the negro following her party, and that he gained on them and passed the couple behind her; that there was a light on the street, but that the place where she was attacked was the darkest place on the street; and that the negro did not say a word, did not try to get her purse, did not attempt to carry her off, and did not try to do anything but hold her.

Miss Bessie Williams testified that the attack occurred about the middle of the block at about eleven o'clock at night, and that two of their party were about a half a block ahead of witness and Miss Tanner, and the other two about the same distance behind them; that witness and Miss Tanner were walking along holding hands when the negro caught Miss Tanner; that the negro caught Miss Tanner by her leg and around the neck, and "didn't put his hands on her waist at all;" that it was about a minute and a half or two minutes after Miss Tanner was caught before witness ran and screamed; that witness had gotten to the corner up the street before the negro turned Miss Tanner loose; that witness looked around and "saw the negro straight in the face," and got a good picture of the negro in her mind; and that the negro who was captured shortly thereafter was the one who caught hold of Miss Tanner.

A. O. Willis heard a young lady scream as he was "pulling off the lights" at the Macon Gas Building, saw two ladies nearly at the corner of Second and Walnut streets, found out what the trouble was, gave chase, and knocked the negro down several times with a pair of pliers, but did not stop him. J. F. Stubbs, who was living in a brick apartment house at the corner of Second and Walnut streets, heard a lady scream, jumped out of bed, saw two ladies on the sidewalk, and chased and captured the negro as he was attempting to escape. T. P. Bailey, who also lived in said apartment house, was in bed when he heard some one screaming. He ran out on the porch, saw two ladies, and went with Mr. Stubbs to capture the negro.

It appears, from the testimony of Romus Raley, that Christ Church sits back forty feet from the sidewalk; that the parish house is sixty-six feet from the church; that "there is an opening between the church and the parish house, with a walkway opening on Walnut street;" that this walkway opened on Walnut street but was closed in the rear; that the trees and shrubbery cut off from

the walkway the light from the street and made it dark; that there was a light at each end of the block on which Christ Church was located, but that only the light at the corner of Walnut and Second streets would throw light in front of the church.

The gist of the defendant's statement to the jury was that he had not arrived at the place where the attack occurred.

"In order to authorize a conviction for the offense of assault with intent to rape, the evidence must show beyond all reasonable doubt, (1) an assault, (2) an intent to have carnal knowledge of the female, and (3) a purpose to carry into effect this intent with force and against the consent of the female. If any of these three elements is lacking, the offense is not made out." Dorsey v. State, 108 Ga. 477 (1) (34 S. E. 135). In that decision it was said: "The main point upon which we place our judgment is, that the evidence does not show an intention on the part of the accused to have carnal knowledge of Mrs. Vines forcibly and against her will. An intention to do any one of three things might be inferred from this evidence: rob, frighten or rape; or there might have been some other motive for his conduct, difficult to conjecture. It is not sufficient that the intent to do one may as likely be presumed as an intention to commit the others; but the question is: Is the intention to commit the crime charged 'more likely to be true than any other?' Carter v. State, 35 Ga. 263." The court summarized the evidence in the Dorsey case in this language: "Mrs. Vines, a white woman was walking along a public road in the country, leading from the home of her husband to that of her father-in-law, at a late hour in the afternoon. When she had reached a lonely point in the road, not within view of any dwelling, the accused, a negro, suddenly sprang up from behind some bushes at the side of the road, with a pistol in his hand, and said to Mrs. Vines: "I have got you where I have wanted you for a long time." He was then some 20 or 25 yards distant from her. She immediately turned and fled, and the accused pursued her for a distance of 70 or 75 yards. He did not relinquish his pursuit until she came within sight of her husband, who was at work in a field near the roadside. The accused then turned and ran off through the woods. He did not get nearer to Mrs. Vines than 10 or 15 yards, nor did he make any attempt to shoot or otherwise injure her with the pistol."

The case of Pauldo v. State, 29 Ga. App. 389 (115 S. E. 668),

is based on the decisions in the *Dorsey* case and in *Johnson* v. *State,* 63 *Ga.* 356. We shall not do more than refer to these two cases, and say that, in our opinion, they are both much stronger than the case at bar.

Considering the time, the place, and the circumstances under which the attack was made on Miss Tanner, in the light of the decisions cited, we are constrained to hold that the evidence does not show an intention on the part of the accused to have carnal knowledge of the young lady forcibly and against her will.

None of the four special grounds complaining of the charge of the court discloses reversible error, and the judgment is reversed solely because the evidence does not.support the verdict of assault with intent to rape.

*Reversed. Broyles, C. J., and Bloodworth, J., concur.*