25515. PICKETT *v.* THE STATE.

Decided June 11, 1936.

*James N. Rahal,* for plaintiff in error.

*John S. Gibson, solicitor-general,* contra.

GUERRY, J. The defendant was convicted of an assault with intent to rape upon Mrs. Mattie Thrift. The defendant was a grown negro man and the victim of his assault was a grown married white woman. On the day of the alleged assault she had been to her mother-in-law's house and about nine o'clock in the morning started back to her home. Her testimony of the occurrence is as follows: "I was walking home and it was down side the branch that I saw this defendant. I had to cross the branch on foot logs and it stopped in the bushes like, time I stepped off the foot logs he had me. The first I saw of the defendant was when he grabbed me by the neck, and had his hand like he was going to slap me and his hand was sorter curved something like this. When he grabbed me I hollered. I could not holler loud because he had me by the neck, when I did holler he mumbled something, but I couldn't understand what he was mumbling. This happened about 25 yards from Mr. John Thrift's house which is on the other side of the branch, that is the place I come from. It was about 28 yards to a house where somebody lived, you could see the house but not the people. When I hollered he dashed and run down that side of the branch to the other side where I come from, the side he caught me on. I never saw any one else, but a minute or two after this happened Flemon Thrift who had heard me holler came to me. . . When I hollered Flemon Thrift answered me and he dashed and run, Flemon Thrift heard me holler and came to me at once. . . Flemon Thrift lives about 25 yards from the branch, and this happened right near my house." Flemon Thrift testified that he was plowing in a field some 150 yards from the place where Mrs. Thrift was attacked and that he ran to her and saw some one· entering the bushes. The defendant set up an alibi. The case is in this court by a writ of error to the action of the trial judge in overruling a motion for new trial, the position taken being that · the evidence does not support the verdict.

In *Dorsey* · v. *State,* 108 *Ga.* 477 (34 S. E. 135), it was said: "In order to authorize a conviction for the offense of assault with intent to rape, the evidence must show beyond all reasonable doubt, (1) an assault, (2) an intent to have carnal knowledge of the female, and (3) a purpose to carry into effect this intent with

force and against the consent of the female. If any of these three elements is lacking, the offense is not made out." In the case at bar the evidence clearly discloses not only an assault but a battery as well, however under the rulings of the Supreme Court it is not sufficient to authorize a finding that defendant intended to have carnal knowledge of the female. As was pertinently said in the *Dorsey* case, supra: "If he did not desire to commit this offense, what was his desire? We do not know. Possibly to rob, possibly to frighten, possibly something else, but we are not willing to say that his conduct showed, beyond a reasonable doubt, that there was more of an intention to commit one than the other. And if it points to one with as great a degree of certainty as another, that which is the least heinous will be presumed to have been intended. This follows logically from the presumption of innocence which the law raises in favor of a person charged with crime." In that case, at a late hour in the afternoon, a white woman was walking in the country along a public road leading from the home of her husband to that of her father-in-law. At a lonely point on the road, not within view of any dwelling, the accused, a negro, suddenly sprang up from behind some bushes at the side of the road, with a pistol in his hand, and said: "I have got you where I have wanted you for a long time." He was then some 20 or 25 yards distant from her. She fled and accused pursued her for 70 or 75 yards, until she came within sight of her husband, who was at work in a field near the roadside. He then turned and ran off through the woods. The Supreme Court held that there was not sufficient evidence to show any intent to have carnal knowledge of the female. Certainly the facts of that case are stronger than those in the case at bar, for here the accused did not make any audible statement as was there made, which frequently discloses an otherwise unknown intent. *Joice* v. *State*, 53 *Ga.* 50, was a case in which such a verdict was set aside by the Supreme Court for the reason that no intent to commit the offense had been shown. There the accused entered the kitchen where a female was washing dishes, blew out the candle and caught her around the waist but did not pull her to him. In *Johnson* v. *State*, 63 *Ga.* 355, Sarah Cole was awakened at night by having some one place his hand over her mouth. She threw up her hand and felt the kinky hair of a negro, when he grabbed her by the

feet and pulled her to the floor. She screamed as he ran. The court held that there was no evidence "that he attempted to have carnal knowledge of Sarah Cole," and set aside his conviction. The facts there were much stronger than those presented in the case at bar. The ruling in the *Dorsey* case, to which there were two dissents, was followed by a full bench in *Horseford* v. *State,* 124 *Ga.* 784 (53 S. E. 322). In *Little* v. *State,* 42 *Ga. App.* 222 (155 S. E. 352), two white girls were walking on a dark street about 11 o'clock at night, and near an alley and some shrubbery the defendant, a negro, caught one of the girls by her neck and by her leg and when she screamed he ran. This court held a conviction for assault with intent to rape was not warranted. See also *Pauldo* v. *State,* 29 *Ga. App.* 389 (115 S. E. 668). Cases such as *Davis* v. *State,* 46 *Ga. App.* 732 (169 S. E. 203) (where the accused, a negro boy had previously annoyed a young white girl with unwarranted attentions, and on the night in question followed her from a store towards her house in an effort to catch her, in the meantime making lustful and suggestive remarks to her), *Jackson* v. *State,* 91 *Ga.* 322 (18 S. E. 132, 44 Am. St. R. 25) (where defendant, a negro, was sitting on the side of a young girl's bed at night, and when she awakened got off the bed but in doing so caught hold of her foot), *Carter* v. *State,* 35 *Ga.* 263 (where a negro, defendant, was found in bed with a white girl, and when she awakened he had his hand on her arm), *Sharpe* v. *State,* 48 *Ga.* 16 (where defendant, a negro entered the room of a girl of 13 or 14 years of age, got into her bed and under the cover, whilst she was asleep, and aroused her by touching her person), *Darden* v. *State,* 97 *Ga.* 407 (25 S. E. 676) (where a white girl of twenty years was awakened from her sleep about midnight by the cover moving on her bed, and when she did not make an immediate outcry the cover moved twice more, whereupon she screamed and the defendant, a negro, ran), *Ware* v. *State,* 67 *Ga.* 349 (where a girl 12 years of age was on her way late in the evening to a neighbor's house, when suddenly the accused, a grown man and a stranger, rushed out from the woods, demanded to know her name and business, took hold of her hand, squeezed it, clasped his arm around her waist, raised her from the ground, and started to bear her to the woods, threatening her life; and when she threatened him with her father, he suddenly dropped her on the ground and fled),

*Jones* v. *State,* 46 *Ga. App.* 679 (169 S. E. 46) (where the defendant, a negro, entered a house, grabbed a young white girl, saying "Come here, I have something for you," and attempted to pull her from the kitchen into a back room), were all stronger under their facts, as to the intent with which the assault was made, than the case at bar.

The white woman assaulted in the case at bar, was at the time within less than thirty yards of two houses, at nine o'clock in the morning with her brother-in-law in calling distance. Other than the seizure of her by the neck, nothing was said or done to indicate what was the real purpose of the defendant. We are therefore of the opinion that one of the essential elements of the crime was not shown. We fully recognize that the Supreme Court said in *Jackson* v. *State,* supra, that "Social customs founded on race difference, and the fact that there was difference of race between the accused and the woman alleged to have been assaulted, may be considered by the jury upon the question of whether the assault was committed with intent to rape." However Cobb, J., in *Dorsey* v. *State,* supra, pointed out that this case went no further than to hold that where the defendant a negro, sets up that he intended to have sexual intercourse with a white woman but it was his purpose to desist if he met with opposition, "such a theory will avail nothing, unless the evidence shows either that the female was not a virtuous woman, or that she had in some way encouraged the approaches of her assailant." Here, there is no evidence of an intent to have sexual intercourse; had there been, this evidence or fact would have been sufficient to authorize the jury to draw the conclusion that defendant intended to carry out such purpose forcibly and against her will. However much crimes of this character may incite within us feelings of resentment, there should be no relaxation of the rule which throws the robe of innocence around a defendant, white or black, which can not be removed without evidence that points beyond a reasonable doubt to his guilt of the crime charged. We think the trial judge erred in overruling the motion for new trial.

*Judgment reversed. Broyles, C. J., concurs. MacIntyre, J., dissents.*