## 33763. TURNER *v.* THE STATE.

GARDNER, J. Lewis Turner was indicted, tried, and convicted in the Superior Court of Wilkes County of assault with intent to rape one Leona Jones by "violently, forcibly and feloniously" assaulting her with intent to ravish her. On the trial of the case, the prosecutrix testified that she arrived in Washington, Georgia, by bus at 10:45 on the night of January 19, 1951; that she was new in that community; that she expected her husband to meet her, but when he did not, she set out to walk to her home at 612 Whitehall Street; that the defendant came by in a taxi and asked her if she wanted a taxi; that, after hesitating, she got in, being afraid she was getting lost; that she told the defendant to take her to 612 Whitehall Street; that she observed him going the wrong way and repeated the address; that he said, "I am going to Whitehall"; that she noticed that he was continuing as he was going before, and then she again told him he must have misunderstood her, that she was not talking about the route to Whitehall but about Whitehall Street, and begged him to turn around. The witness continued: "He picked up speed then and kept going, and when he got to this dirt road, he got off the pavement; I didn't know what I was going to do. I had to think fast. I knew I couldn't jump out on the highway after he got on the pavement, I was afraid of being killed. I didn't know exactly what I was going to do, but after he went to turn in, that is when I had to jump, and just then I opened the door . . and jumped out and he put on speed. I tried to jump to my feet where I would not fall. I don't know exactly how I fell, but anyway I was trying to jump to my feet. I kind of fell some way or another. But anyway, I was getting up, and when he found out I had jumped he put on brakes. I had already got out and went to get up when he attacked me, and some way or another I was on my feet and got loose from him and ran to the highway. He backed out and when I got up the highway a little piece he drove along slow and asked me an unfair question. He told me if I would give him some . . he would take me back to town. I told him I was going straight to town and report him." The witness further testified that, after saying this, she was afraid the

defendant would come back and try to hurt her; that she walked the four miles into town, being afraid to stop and ask anybody before she got there; that she finally asked a man in a truck the direction of Whitehall Street; that she walked across the street and realized she was not too far from the bus station; that she started walking back to Whitehall and met her husband, who was out looking for her; that she was crying and dirty and her stockings torn; that he asked her what had happened and she told him. "I didn't tell him everything that had happened, but that the taxicab man had taken advantage of me." Her husband then took her to the police station and reported that the witness had been forcibly carried beyond her destination and forced to jump out and walk back to town. She did not at first mention anything to the sheriff about immoral conduct because she wanted her husband to tell him. On cross-examination, she stated: "I don't know whether he (the officer) got the impression from talking to me the first time that all I was claiming in making a case was his taking me beyond my destination or not. I don't know whether I told the sheriff that the boy put his hands on me or not. In a situation like I was, excited and having walked four miles, I was not responsible for what I said; I couldn't tell you. . . Probably I got to the sheriff's office about 12:30 or quarter to 1. I don't know how long it was after that before I told the sheriff the second time, because I had to have a doctor; I was sick and went to bed. I don't know whether I told him in his office anything about his doing anything except taking me beyond my destination. I still hadn't told the sheriff the next day. It might have been the next day before my husband made his report; I was sick, I don't know." Four county officers testified in substance that the prosecutrix and her husband had reported that the witness had been carried beyond her destination; that they located the defendant the next morning; that he first denied he had seen the witness; that he later stated he had "picked her up and carried her on past the lumber piles, and said she wanted to get out and said he carried her on and turned in the Ficklin Road. She still wanted to get out, but he didn't stop. She jumped out of the car when he stopped the car and backed up and got out to help her or see was she hurt. He said he didn't know what he was going to do up there." In this statement he contended that "he misunderstood where she wanted to go, started out the Ficklin Road with her, he thought she said somewhere out that way." The chief of police further testified: "He made a statement about making an improper proposal to her. He admitted to me he carried her there with the intention of having intercourse, and said if he got out of that he would never get in anything else. Nothing was said about forcible intercourse. He didn't say anything about he tried to rape her." The police officers examined the spot where the defendant had jumped from the car and found marks of her footprints, a place where she had apparently fallen, and certain purchases belonging to her, which later were in evidence. The defendant's statement was as follows: "Well, I was going down that street that night and just before I got to the Catholic Home, I turned there, she flagged me down, she said 'Taxi?' I say 'Yes.' I had my radio on. It was

pretty loud. She walked around in front of my taxi, came on the right-hand side, opened the back door, and got in. She talked sort of coarse, and I understood her to say she wanted to go the Ficklin Road, that she lived there. That is where I took her. I went out Whitehall Street, got there at the cemetery, the road turned to the left to go to Harvey Jackson. I turned in that street. There was not a word said going out that street by me and her; got to Harvey Jackson's and turned to the right on the Ficklin Road. Still nothing was said about 'You are on the wrong road now.' I went out that road and got out of the city limits a little piece. She said, 'You are on the wrong road.' I said 'Where did you say you lived?' She said 'Whitehall.' I said, 'Well, I will turn and take you back to Whitehall.' I pulled in the road to turn around, and when I pulled in the road and was going to turn around she opened the door and jumped out. I didn't get out of that taxi or put my hands on her. So she got up and started walking up the highway. I backed my taxi up. I said, 'Come on and get in, I will take you to Whitehall. I misunderstood you when you said where you wanted to go.' So she would not do it. And the closest I had got to that woman was from the front seat to the back. I did not get out and put my hands on her. I would not have thought of no such thing as that, my getting out there and trying to do it to a negro woman. That is all I have to say about it." The jury returned a verdict of guilty of assault with intent to rape. The motion for a new trial was overruled, and the exception is to this judgment. *Held*:

1. The first ground of the amended motion for a new trial contends that the judge committed error in his charge, in that, after the jury had deliberated for some time after they returned and requested instructions on the question "as to whether this woman had been touched by this man or not," thereupon the court charged that an assault is an attempt to commit a violent injury on another; that contact is not essential to the commission of the assault; that the elements of the crime are assault, intent to have carnal knowledge, and purpose to effect such intent forcibly and against the woman's will, and that the assault may be made with or without contact. It is contended that this was erroneous, in that it might have led the jury to believe that they would be compelled to find the movant guilty if they found that he used mere words, without threats or intimidation, whether or not there was any evidence that the defendant intended to commit a violent injury on the person of the prosecutrix. From an examination of the language used by the court, this contention would appear without merit, it appearing that the court, while directly replying to the jurors' question charged them that contact was not essential, and further charged again the elements of the crime, including the purpose to effect the intent forcibly.

As stated in *Jackson* v. *State,* 91 *Ga.* 322, 329 (18 S. E. 132, 44 Am. St. R. 25): "No actual touching of the woman's person is necessary to complete the assault. There need be nothing more than the intention to accomplish sexual intercourse presently by force, and the active prosecution of that intention until a situation of immediate, present danger to

the woman is produced." See also *Davis* v. *State,* 46 *Ga. App.* 732 (169 S. E. 203); *Ponder* v. *State,* 64 *Ga. App.* 402 (13 S. E. 2d, 388). This contention is without merit.

2. The *second special ground* complains that the law of assault and battery was not charged. While it is error, even in the absence of request, on a trial of one charged with assault with intent to rape, to fail to charge the lesser offense of assault and battery, where the elements thereof are included in the indictment and there is evidence which would authorize a finding of guilt of that offense (see *Fields* v. *State,* 2 *Ga. App.* 41 (3), 58 S. E. 327; *Barton* v. *State,* 58 *Ga. App.* 554, 199 S. E. 357; *Reeves* v. *State,* 78 *Ga. App.* 126, 50 S. E. 2d, 640)—nevertheless, there may be an assault with intent to rape without committing a battery on the female assaulted (*Goldin* v. *State,* 104 *Ga.* 549 (1), 30 S. E. 749), and where no battery is charged in the indictment, a conviction of assault and battery will not stand. *Davis* v. *State,* 41 *Ga. App.* 466 (153 S. E. 436). The indictment here charges merely that the defendant "violently, forcibly, and feloniously, did make an assault with the intent, on her, the said Leona Jones, then and there forcibly and against her will to feloniously ravish and carnally know." No striking or beating is charged, and, since the elements of assault and battery are not present in the indictment, the court correctly omitted to charge this offense. It should be noted, however, that the indictment does embrace the lesser offense of assault, and had error been assigned on the failure of the trial court to charge this offense, reversal of the trial court would have been demanded. See *Smalls* v. *State,* 6 *Ga. App.* 502 (2) (65 S. E. 295).

3. In considering the general grounds of the motion for a new trial, attention is called to the case of *Dorsey* v. *State,* 108 *Ga.* 477 (34 S. E. 135), in which the elements of proof necessary to sustain a conviction of assault with intent to rape are most lucidly set out, and to *Parker* v. *State,* 72 *Ga. App.* 302 (33 S. E. 2d, 739), a recent case holding the evidence insufficient to prove the element of intent to commit a rape, as opposed to an intent equally to commit some other crime, and numerous cases cited therein. Since in every case of this kind the details vary according to the event, an analysis must be made, and a judgment based thereon, as to whether the proof offered, construed in its light most favorable to upholding the verdict, authorized the jury to find (1) an assault, (2) an intent to have carnal knowledge of the female, and (3) to have a purpose to carry into effect this intent with force and against the consent of the female. As to the assault, the evidence of the prosecutrix was that the defendant "attacked" her. As to his intent, there is the evidence of the prosecutrix that, after she fled from the car and began walking down the road toward town, the defendant drove by and told her that he would drive her back to town if she would have sexual relations with him; also his statement to the police officer that his purpose had been to have intercourse with her. As to his purpose to carry this intent into effect by force and without her consent, there is the evidence of the prosecutrix, corroborated by circumstantial evidence, that the defendant ignored her directions to him to drive her to her home, but on the contrary drove in another direction out into

the country on a little-used road, and turned off from that road into a dead-end road, at which point the defendant jumped out of the car; that none of this was with her consent; and that his only explanation of his conduct was that he had mistaken the destination she desired, which explanation the jury failed to believe. The elements of the offense were, therefore, each supported by the evidence, and the trial court did not err in overruling the motion for a new trial. It will thus be noted that, in the cases relied on by the defendant for a reversal, there was no evidence question as to the intent of the respective defendants. In the instant case, the proven intent—and admitted to be so by the defendant—was sexual intercourse. This left only one question for the jury, and that was whether all the facts and circumstances of this case authorized the jury to find that it was the purpose of the defendant to effectuate this assault by force and against the will of the female. In our opinion the jury were authorized so to find.

*Judgment affirmed. MacIntyre, P.J., and Townsend, J., concur.*

DECIDED DECEMBER 5, 1951.

*Colley & Orr,* for plaintiff in error.
*J. Cecil Davis, Solicitor-General, Earle Norman,* contra.