## HORSEFORD *v.* THE STATE.

' The evidence did not warrant the verdict, and the court erred in overruling the motion for a new trial.

Submitted January 15,—Decided February 15, 1906.

Indictment for assault with intent to rape. Before Judge Bartlett. Paulding superior court. November 15, 1905.

    *F. M. Richards* and *C. D. McGregor,* for plaintiff in error.

    *W. K. Fielder, solicitor-general,* contra.

FISH, C. J. Dock Horseford was tried and found guilty of the offense of assault with intent to rape. He moved for a new trial, on the general grounds that the verdict was contrary to evidence and without evidence to support it, and was contrary to law, etc. A new trial was denied, and he excepted. The substance of the material evidence submitted in behalf of the State was as follows: The female alleged to have been assaulted was twelve years old. At the time of the alleged assault, three or four o'clock in the afternoon of a day in April, she was at her father's house, which was situated about twenty-five yards from the road and two hundred and fifty yards from her father's mill, where the accused knew her father and grandfather were at the time. Her mother had gone to the home of the girl's grandfather, about half a mile away, and the accused also had knowledge of this fact. There were woods extending from near the house where the assault was alleged to have been committed to near the mill, and a path leading through them to the mill. There were present at the house where the girl was alleged to have been assaulted her sister, eleven years old, and her baby brother. The age of the accused was not shown, but it appeared that he wore a number eight or nine shoe, and one of the

State's witnesses referred to him as a boy under age. The accused lived about a mile from the scene of the alleged assault, and the girl alleged to have been assaulted had known him four or five years. A short time before the alleged assault was committed, the accused carried a bag of corn to the mill and left it there to be ground. He hitched his mule at the mill, and, while waiting for his corn to be ground, went to the house where the girl was. She was sitting in front of the house on three planks, the rear ends of which rested just inside the door of one of the rooms of the house, the other ends resting on the ground, the planks, in the absence of steps, being used for the purpose of passing in and out of that door. These planks were sixteen feet long and the rear ends were about three feet from the ground. The girl's feet were resting on the ground. The accused approached the house from the rear, crawled under it from the rear and on under the planks upon which the girl was sitting, until he reached a point directly under her. The girl testified in part: "I jumped off the planks when I saw him. I was playing a . . harmonica. My sister was sitting in the other door, where she could see me. Horseford was lying under the planks when I saw him—the planks I was sitting on. He was lying on his front. How come me to see him, my sister motioned for me to look under, and I looked under and saw him. Then he grabbed my leg, my right leg. He caught hold of it pretty tight, and just as I jumped up he jerked loose. I run and grabbed my little brother and run to the mill. My sister went with me. I didn't scream. She cried. I was very much frightened. I hadn't seen him when he grabbed me by the leg. He was lying under the planks when he grabbed me by the leg. He was lying flat on the ground under the planks I was on. . . He didn't say anything. . . The first time I saw him my sister called my attention—motioned—pointed for me to look under. He caught me right down there on the leg [indicating to the jury], clear around the leg. . . I didn't have any trouble in getting loose from him. . . As soon as I jumped up, he turned loose and ran." She told her father what had occurred, as soon as she reached the mill. The sister of the girl assaulted testified in part: "When I first saw Horseford he was stretched out under the planks. I motioned her to look down. He just grabbed her by the leg and pulled it from under the planks. She jumped up and ran into the house. She

wasn't crying. I wasn't crying. I was frightened. We took our little baby brother and ran to the mill. We told our father about it. Horseford ran around the corner of the house. . . He was lying down there, flat on his stomach, on the ground. I knew who he was as soon as I saw him. I recognized him because I could see his face; his head was towards me. . . He didn't do anything but just grab Bessie [her sister] by the leg and hold it there under the planks, and then run around the corner of the house." Immediately after the assault the accused returned to the mill for his meal and mule, and was detained there by the grandfather of the girls, and was soon thereafter arrested. He denied committing the assault, and denied going to the house at all.

While the evidence was, of course, sufficient to have authorized a verdict for assault, or assault and battery, we do not think it warranted a conviction of assault with intent to rape. The essential elements of the last-named offense are, (*a*) an assault, (*b*) an intent to have carnal knowledge of the female; and (*c*) a purpose to carry into effect such intent with force and against the consent of the female. *Dorsey* v. *State*, 108 *Ga.* 477. And before a conviction can be legally had, there must be no reasonable doubt, from the facts and circumstances proved, of the existence of any one of such necessary ingredients of the crime. *Gaskin* v. *State*, 105 *Ga.* 631; *Dorsey* v. *State*, supra. When we consider that the assault occurred in broad daylight, in front of a dwelling-house which was in close proximity to the road and near the mill, where the accused knew that the father and grandfather of the girl, and, as the evidence shows, a neighbor also, were at the time; that the sister of the girl assaulted was in close proximity to her and must have been seen by the accused; that he lived in the same neighborhood, only about a mile away, and was well known to both of the girls; that he left his corn and mule at the mill, where the girl's father was, and doubtless expected to return there for the meal and the mule; that he merely caught the girl by one of her legs, and that, too, it seems, after he had been discovered under the planks on which she was sitting; that he said nothing at all and did nothing more, but ran off as soon as she jerked loose, and returned to the mill, where he knew her father and grandfather were, for his meal and mule,— we say, when these facts are taken into consideration, a very grave doubt necessarily arises both as to the intent of the accused to have

carnal knowledge of the girl, and as to his purpose to carry out such an intent, if he had it, forcibly and against her will. What his purpose was we, of course, do not know. Impelled by a lascivious and degraded nature, he may have intended merely to get under the girl and peep at her person, and, when discovered, may have caught her leg in order to frighten her, or he may have had some other foolish and malicious intent,—we can not say; but whatever his purpose may have been, we feel safe in saying that the facts and circumstances do not show, beyond a reasonable doubt, that his intent was to have carnal knowledge of her person, and to do so forcibly and against her will. The former adjudications of this court, as well as many decisions of other courts, as to the sufficiency or want of sufficiency of particular facts and circumstances to show, beyond a reasonable doubt, the specific criminal intent essential to constitute an assault with intent to rape, are collected and commented upon by Mr. Justice Cobb in the majority opinion rendered in *Dorsey* v. *State,* supra; and it will appear, we think, that in some of the cases decided by this court, there referred to, the facts and circumstances held to be insufficient to warrant a conviction tended more strongly to indicate the presence of the necessary criminal intent than do the facts and circumstances of the case now under consideration. As the evidence did not warrant the verdict, the court erred in overruling the motion for a new trial.

*Judgment reversed. All the Justices concur.*