## SMITH *vs*. THE STATE OF GEORGIA.

1. The verdict of voluntary manslaughter was supported by the evidence, and the sentence was as mild as the facts would justify.

2. Where one provokes a difficulty, and thereby becomes the assailant, and makes no effort to decline the combat so provoked and commenced, but takes human life in such contest, the homicide is not justifiable; and a charge to that effect was not error.

3. When one voluntarily shoots at another and the shot kills, the homicide cannot be involuntary; and where, under no rational view of the facts, the killing can be involuntary homicide, the judge

should not confuse the jury by a charge on the law concerning that offense.

4. Two convictions by juries in different counties on the same case for the same offense ought to have weight with the presiding judge on the motion for new trial, and with this court in reviewing his decision; but where the facts would have authorized a verdict of guilty of murder, and the jury have found the defendant guilty of voluntary manslaughter, the court could not do otherwise than sustain the finding. 57 *Ga.*, 183; 16 *Id.*, 204; 58 *Id.*, 212. Judgment affirmed.

April 15, 1884.

JACKSON, Chief Justice.

[Eason Smith was indicted for the murder of Franklin Mills. On the first trial, a verdict of " guilty of manslaughter" was found, and a new trial was granted. A change of venue was had from Clinch to Ware county. On the last trial, the evidence for the state was, in brief, as follows:

A feud existed between Benajah Mills, the brother of the deceased, and defendant. On May 1, 1880, Benajah, the deceased, and several connections went into Homersville, in Ware county. Benajah saw defendant coming towards him, and motioning to his brother, the deceased, they walked off. Seeing defendant coming after them, they stepped into a lot, stopped a few minutes and then walked out to the gate. Defendant came up, caught Benajah by the coat-sleeve, and said, " Come this way; there is a difficulty pending between us that's got to be settled this day." Benajah said he thought they could settle it, if defendant would allow him " to reason this case;" that he did not wish a trouble, because defendant had " accused him wrongfully." Defendant became very angry, and invited Benajah to fight; the latter declined, and said he would rather settle it outside of a fight. Defendant dared him to a fight, and " slapped " his fist in Benajah's face, and marking a ring on the ground with his foot, invited him "to come into" him, saying, "I will fight you a fair fight." Several gathered around (among them the friends

of both parties) and tried to quiet him down, but he told them to let him alone, and indulged in very profane language; and during the latter part of the difficulty, Benajah indulged in like profane retorts. When defendant said he would fight a fair fight, a friend of Benajah said, "Eas, if it's a fair fight, I see you have got a pistol and Benajah has none," and told him to put it up. Defendant shoved this adviser in a rough manner. He started towards Benajah, who pulled out a large pocket knife and opened it, but on being told to put it up, did so. Defendant came up to him. Deceased, who was standing five or six steps to one side, said, "Eas, don't shoot him or cut him." Defendant wheeled and said, "Do you take it up, you God-damned rascal?" At the same time, he pulled out a pistol and fired upon deceased, producing a wound from which the latter died. As soon as he did this, Berrien Mills, another brother, knocked defendant down with a weight, and another of the same family began beating him. He rose to his knees, and while one of the Mills boys was grasping the pistol, he fired a second shot in the air. Deceased ran up, and drawing a pistol, fired into the face of the defendant. The latter dropped his head; and one of the participants in the *melee*, thinking he was dead, told the others that he was killed, and not to shoot him any more. Deceased fell and was found to be mortally wounded. Two of the Mills family, who took part in the tragedy, had been invited up to see Benajah, and went to town with him on business. He asked another brother to go with him, because he was expecting this difficulty; the latter demurred at first, but then consented, saying, "May be if I go, he won't bother us." They went with peaceable intentions, and there was no other understanding for them to meet there that day than that detailed. Benajah had heard of threats on the part of defendant against him and any others of the family who should "take up" the difficulty. After the shooting, Griffin, a cousin of the Mills boys, took a gun and followed the defendant.

The evidence for the defendant was, in brief, as follows: On the day before the killing, the wife of Berrien Mills, a brother of deceased, went to spend the day with the wife of defendant, with whom she was friendly. On the morning of the tragedy, the Mills party came in town together, and during the affray, they were armed with various weapons, Benajah having a knife, deceased a pistol, and Berrien a weight, with which he knocked defendant down; another, Daniel Mills, also having a weight. Griffin was unusually friendly, although he and defendant had recently had a dispute, and insisted on defendant's taking drinks with him. He called defendant out of a store, and they went up the street together. Soon after this, the difficulty began. Defendant was urging Benajah to fight, drew a ring on the ground, invited him to a fair fight, and "popped" his fist in his hand in Benajah's face. The latter drew his knife, and the Mills party began crowding around. Defendant drew his pistol, told them not to crowd him, that he wanted a fair fight, and fired his pistol into the air. This shot did not hurt anybody, and was not fired in the direction of the deceased; there was no quarrel between defendant and deceased, but it was with his brother. When defendant fired into the air, Berrien Mills knocked him down with a weight; another of their party sprang on him and held him, and several others beat him with weights. Defendant struggled to his knees; deceased ran up and shot him in the face, putting out his eye, and defendant returned the fire, killing the deceased.

The statement of the defendant was similar to the testimony in his favor, except as to the shot that caused the death of the deceased. As to this, as it appears in the record, it is unintelligible. It is in these words:

"I got my pistol out of my pocket and told them I didn't want to fight them, except a fair fight, one at a time, and held it up in the air and fired it; and Berrien Mills threw a weight at me and knocked me down; and John F. Smith jumped on to me and started to cut my throat;

and this fellow, Franklin Mills, was standing at the corner,. and he ran up and put his pistol to my face and fired, and. as he did, I jugged mine tosse, and it happened to hit him as an accident."

The jury found the defendant guilty of voluntary manslaughter, and he was sentenced to two years in the penitentiary. He moved for a new trial, on the following grounds:

(1.) Because the verdict was contrary to law and evidence and the charge of the court.

(2.) Because the court did not charge on the subject of involuntary manslaughter.

(3.) Because the court charged as follows: "If you find that he was surrounded by this urgent and pressing danger at the time of the killing, you will then inquire further, was the deceased the assailant, or did the defendant in good faith endeavor to decline any further struggle before giving the mortal blow? In order to make it a case of justifiable homicide, it must appear, first, that there was this urgent and pressing danger to the defendant at the time of this killing; and it must further appear that the person killed was assailant, or that the defendant in good faith endeavored to decline any further struggle before giving the mortal blow. Although a man's life be in danger, yet if he is responsible for that danger, if he provoked that danger, then the existence of the danger cannot be urged as a defence to himself. In order to justify his act upon the plea that this danger exists, it must appear that he is not responsible for the danger, but that the other party is."

The motion was overruled, and defendant excepted.]