## 3854.  McCULLOUGH v. THE STATE.

1. Where a negro man is on trial, charged with the crime of making a felonious assault upon a white woman, the jury may, in determining the intent with which the assault was made, take into consideration the difference in race, and social customs founded thereon, and, in the absence of any encouragement given by the woman, find that a felonious intent existed, even where the assault was not aggravated and was immediately abandoned upon show of resentment and indignation.

2. Where the general charge to the jury embodies, in substance, legal principles contained in written requests to charge, any error in refusing the requests is harmless.

3. On the trial of an indictment for an assault and battery with intent to rape, where the evidence shows that the lesser offense was committed as a part of the felony, it is ordinarily the duty of the trial judge to define the offense of assault and battery; but an instruction to the effect that if the accused, at the time of making the assault and battery upon the woman, did not entertain the felonious intent charged, he would be guilty of the lesser offense of assault and battery, was substantially equivalent to a definition of assault and battery as pertinent to the evidence.

4. While the jury may believe the statement of the accused in preference to the evidence, they should do so only in the event that they believe the statement to be the truth of the transaction. A charge to this effect was not error.

5. Objections to rulings on the admission of testimony that will probably not occur on a second trial require no decision.

6. The right to poll the jury in a criminal case is an important legal right that should not in any manner be abridged or rendered nugatory by any action of the trial judge. This right must be demanded when the verdict is published and before the jury disperses, and before sentence is imposed. It can not be exercised with justice to the State or to the accused after the jury have dispersed or after sentence has been passed.

7. In a criminal case, where the evidence did not demand the verdict, and where the jury, after having been out considering the verdict for some hours, returned into court, and the foreman handed the verdict to the solicitor-general, who read it aloud, and immediately, upon the conclusion of the reading, the trial judge imposed the extreme penalty of the statute by announcing, "twenty years in the penitentiary," before the attorney for the accused had time to demand that the jury be polled, this conduct of the judge requires the grant of another trial. It deprived the accused of the exercise of his right to poll the jury; and the error was not cured by the subsequent permission to poll the jury, for the sentence destroyed the right or rendered it worthless.

DECIDED JANUARY 15, 1912.

Indictment for assault with intent to rape; from Gordon superior court—Judge Fite.  October 28, 1911.

*O. N. Starr,* for plaintiff in error.

*T. C. Milner, solicitor-general,* contra.

HILL, C. J. 1. Jerry McCullough, a negro man, was convicted of assault with intent to rape, the alleged victim being a white woman. His motion for a new trial was overruled, and he brings error. In view of the fact that we have decided that another trial should be granted on one of the special assignments of error, it is unnecessary to state the evidence. It is not improper, however, to say that the evidence for the prosecution makes a clear case of assault and battery, but leaves in doubt the felonious intent charged. But the intent with which an assault and battery was made is peculiarly a question to be determined by the jury, and, under the repeated rulings of the Supreme Court as to the question of intent in cases where black men assault white women, with special reference to racial differences and the well-established customs which emphasize these differences, we do not feel authorized to disturb the verdict as being without any evidence tending to establish the felonious intent with which the assault and battery was committed. *Carter* v. *State,* 35 *Ga.* 265; *Jackson* v. *State,* 91 *Ga.* 322 (18 S. E. 322) ; *Watkins* v. *State,* 68 *Ga.* 832; *Darden* v. *State,* 97 *Ga.* 407 (25 S. E. 676) ; *Dorsey* v. *State,* 108 *Ga.* 477 (34 S. E. 135). The doubt, however, on this point, which would unquestionably be sufficient to acquit of a felony but for the decisions above cited, and which, even in the light of these decisions, under the evidence in this case, arises as to the intention of the accused in laying his hands on the woman without actual violence, and in desisting immediately upon the show of resentment on her part, accompanied by the declaration that he intended no harm, makes us the more readily grant a new trial on the assignment of error hereafter considered. If the evidence demanded the verdict as rendered, we would treat this error (which we deem presumptively to have been prejudicial under the facts of this case) as harmless.

2. Exceptions are taken to the refusal of the court to give certain instructions requested, relating to the necessity for showing by evidence the existence of the felonious intent charged in the indictment. These requests substantially state the law and make a concrete application to the facts; but an examination of the general charge given to the jury shows that the material portions of the instructions requested were substantially given, and were

sufficiently applied to the facts to make clear the law on the subject.

3. Objection is also made to the omission of the trial judge to define the offenses of assault and battery and of simple assault. Under the evidence, the charge should have defined the offense of assault and battery; but the judge distinctly told the jury that the accused would not be guilty of the felonious assault charged, unless, at the time he laid his hands upon the female, he intended to commit rape, but would be guilty of the offense of assault and battery; and this instruction was sufficient, in lieu of any more specific definition; for the jury could not have failed to understand, from this charge, that the unlawful laying of the hands upon the female by the accused, without a felonious intent, was in law an assault and battery. The indictment charging an assault and battery with a felonious intent, and the evidence showing an assault and battery, the trial judge could not properly have charged on the subject of simple assault.

4. Referring to the defendant's statement to the jury, the judge charged as follows: "You may believe it in preference to the sworn testimony, provided you believe it to be the truth." It is objected that the use of the word "provided" was an improper restriction of the unlimited right which the statute gives to the jury to believe the statement in preference to the testimony. We do not construe the statute to give to the jury this unrestricted right. The statute in terms says that the jury "may believe" the statement "in preference to the sworn testimony." Penal Code (1910), § 1036. It is a matter of discretion with the jury; but it would be absurd to claim that it was intended to give the jury the right to credit the statement unless they believed it to be the truth of the transaction; and the use of the word " provided " did not restrict any legitimate right of the jury.

5. Several objections were made to the admission of testimony, but it is not deemed necessary to consider these objections, as they will hardly occur on the second trial.

6. We come now to the assignment of error upon which we think, under the facts of this case, the accused should be granted another trial. As before stated, the evidence did not demand the finding. It was doubtful as to the felonious intent. The jury, if the evidence had been clear as to the intent, would promptly have

rendered a verdict of conviction. They were out considering the verdict for several hours, and the only matter about which there was any doubt, or which would have caused any juror to hesitate in agreeing to the verdict as rendered, was the existence of the felonious intent charged. When the jury finally agreed and returned a verdict for a felony, the foreman handed the verdict to the solicitor-general, who published it. *"Immediately"* upon the conclusion of the reading of the verdict by the solicitor-general, while the jury were still standing, and without giving counsel for the accused time to demand for his client the right to poll the jury, the presiding judge sentenced the accused in the following language: "Twenty years in the penitentiary," the extreme limit of punishment allowed by the statute. This precipitate and severe sentence could have had but one effect upon the jury, namely, the impression of judicial approbation of the verdict, and individual indignation against the accused. The sentence thus imposed deprived the accused of his legal right to poll the jury, at least it destroyed any possible value which the accused could have acquired by the subsequent polling of the jury; for even if any juror had been reluctant in consenting to the verdict, and had changed his mind and had concluded to withdraw his assent when polled, this strong approval by the court of the verdict would have induced any wavering juror to abandon any intended dissent and to agree to the verdict on subsequent polling.

The manner in which the sentence was imposed was unusual. It was in striking variance from that orderly judicial procedure which has generally characterized the conduct of judges in imposing sentences in cases of such gravity. In a practice of thirty-five years, twelve years of which was as prosecuting attorney, the writer never knew the presiding judge to impose a sentence of such severity in a case of such grave character without first asking counsel and accused if there was any reason why sentence should not then be imposed, and he has never known the presiding judge in the slightest degree to interfere or prevent the full exercise of the right of the accused to poll the jury after the verdict had been published or by word or deed to impair the possible value in the exercise of such right. This very unusual conduct of the judge must therefore have made a strong impression upon the mind of each one of the jurors, for it is altogether probable that they had never before

seen it occur in court, a place where "justice is judicially administered." The writer fully sympathizes with the judge in any indignation that he may have felt on account of the heinousness of the crime of which the accused had been convicted; nevertheless, above everything else, although convicted, the accused should have been given the full, free, and valuable exercise of any right to which he was entitled under the law.

Practically, the act of polling the jury has rarely resulted beneficially to the accused. In fact, in the writer's experience above stated, he has never seen it result in any practical benefit; but, if there ever was a case in which it might possibly result in benefit, it would be a case where, under the evidence, there was doubt as to the felonious intent, and where the jury had for several hours considered the evidence before arriving at a satisfactory conclusion as to the existence of such intent; for it must be conceded that nothing short of grave doubt would have caused hesitation and a delay of several hours in arriving at a verdict. The law of this State places a high value in criminal cases upon the right of the accused to poll the jury. In civil cases the right is discretionary with the presiding judge; but in criminal cases polling is not a privilege to be granted in the discretion of the judge, but is a legal right, and it has always been held to be a material and reversible error to refuse the free exercise of this right. *Tilton* v. *State,* 52 *Ga.* 478; *Russell* v. *State,* 68 *Ga.* 785, 788; *Blankenship* v. *State,* 112 *Ga.* 402 (37 S. E. 732). Did the judge deprive the accused of this legal right or impair its value? For the reasons given above, we think that he did, because it made the subsequent exercise of the right which he granted worthless. The polling of the jury amounted to nothing, in the face of what was necessarily implied by the hasty and severe sentence. Besides, no opportunity was given to counsel for the accused to demand the right before the sentence was imposed.

The recital in the bill of exceptions is that *"immediately"* upon the reading of the verdict the sentence was passed. The word " immediately " means " instantly," " at once." Standard Dictionary. And when the judge verifies this recital in the bill of exceptions, it is equivalent to stating that "instantly," "at once," upon the reading of the verdict, he imposed the sentence.

In support of the views here stated we cite the case of *Robinson*

v. State, 109 Ga. 506 (34 S. E. 1017), in which the Supreme Court held that " it is too late to poll a jury after the sentence of the court has been pronounced." In that case the jury had not separated and mingled with the public after the verdict had been published; that would destroy the right to poll; but the presiding judge, some minutes after the publication of the verdict, passed sentence, and the reason why it was too late to poll the jury after sentence had been imposed is stated in the opinion of the Supreme Court to be analogous to the reason why the right is lost after the jury have mingled with the public. The language of the opinion is as follows: "The well-settled rule that a request to poll a jury should be made before the members of it disperse and mingle with the bystanders is, of course, based upon the idea that it would be dangerous to allow a juror who might have heard something calculated to change his mind to have an opportunity to recede from a verdict to which he had really agreed. Certainly, nothing would be more likely to have such an effect than a sentence of which a juror did not approve. In this case, the punishment inflicted was, we are informed, a term of fifteen years in the penitentiary, and it would not have done to allow the jury to be polled after they knew what the judgment of the court was. We think it was a proper one, but no man can tell how the jurors may have regarded it, or that, after it was announced, some of them might not have desired to annul a verdict to which they had deliberately assented." The reason here stated by the Supreme Court for making it improper to poll a jury after the sentence had been passed is that some juror might, on account of the severity of the sentence, be induced to recede from his verdict. Logically the same reason applies where not only the severity of the sentence, but the manner in which it was imposed, might have led a reluctant juror to adhere to the verdict, although he had determined to recede therefrom when polled.

We think, under the principle here decided, that the accused in this case must be granted a new trial. In courts of justice, where order and deliberation should characterize every step of judicial procedure, no necessity should be created for an unseemly contest between the presiding judge and counsel for the accused. The attorney should not be required to be acutely on the alert to precipitately, and immediately upon the reading of a verdict, jump to his feet and demand the right to poll the jury, for fear that the

presiding judge might destroy this right by the too quick imposi-
tion of sentence. He should rest content in the knowledge that he
will be given every opportunity to demand for his client every right
to which he is under the law entitled, and that nothing will be
done by the presiding judge to deprive him of this right or to pre-
vent its exercise in such manner as to secure to his client the full
value which the law implies in the bestowal of the right.

*Judgment reversed.*