# CASES

## DECIDED IN THE

# COURT OF APPEALS OF GEORGIA

### AT THE

## OCTOBER TERM, 1912

---

### 4471. REGISTER *et al.* *v.* THE STATE.

1. Where a verdict of involuntary manslaughter in the commission of an unlawful act is returned, and is read in open court by the foreman of the jury, and the court refuses to receive such verdict or to allow it to be recorded, and, under further instructions, the jury subsequently return a verdict finding the accused guilty of voluntary manslaughter, which verdict is received and published, and the accused, without excepting in any manner to the first verdict, files a motion for a new trial, claiming the right to have the verdict of voluntary manslaughter set aside, upon the ground that the verdict of involuntary manslaughter was the legal verdict in the case, and the motion for a new trial is overruled, and the reviewing court reverses this judgment, upon the sole ground that the first verdict was a final termination of the case, the accused can not again be tried under the same indictment for any offense; but the trial court should receive the first verdict, and have it recorded upon the minutes of the court, and sentence the accused thereunder.

2. Where one procures from a reviewing court a decision that one verdict purporting to convict him of a crime is void, because a previous verdict convicting him of another offense in the same case was legal and valid and a final termination of the case, he is thereafter estopped from asserting that the first verdict was invalid because not received by the court and recorded on its minutes, or because the court failed to allow the accused time within which to poll the jury.

DECIDED NOVEMBER 27, 1912. REHEARING DENIED DECEMBER 21, 1912.

Indictment for murder; from Colquitt superior court—Judge Thomas. April 8, 1912.

*W. A. Covington, James Humphreys, E. L. Bryan, Payton, Hay & Nottingham,* for plaintiffs in error.

*J. A. Wilkes, solicitor-general, Shipp & Kline,* contra.

POTTLE, J. At the April term, 1911, of Colquitt superior court the accused were placed on trial under an indictment charging them with the offense of murder. The trial judge instructed the jury upon the law relating to murder, voluntary manslaughter, and justifiable homicide, but declined to give them instructions upon the law of involuntary manslaughter. The jury, however, returned a verdict finding the accused guilty of involuntary manslaughter. This verdict was read in open court by the foreman of the jury, but the trial judge declined to receive the verdict or to permit it to be recorded upon the minutes. He directed the jury to return to their room for further consideration, stating to them that he could not receive the verdict which they had attempted to return, and that he had given them no instructions upon the law of involuntary manslaughter. Subsequently the jury brought in a verdict finding the accused guilty of voluntary manslaughter, and judgment of conviction was duly entered upon this verdict. Counsel for the accused took no direct exception to the action of the court in failing to receive the first verdict, but filed a motion for a new trial for the purpose of having the second verdict set aside. In this motion one of the reasons alleged why the second verdict should be set aside was that the accused had the right to have the first verdict filed, it being the intention of the jury to give the defendants the benefit of the lower grade of punishment provided for the crime of involuntary manslaughter, and the legal effect of the first verdict being that the defendants stood guilty of involuntary manslaughter in the commission of an unlawful act, which verdict operated as an acquittal of all higher grades of unlawful homicide. The motion for a new trial was overruled, and the case was brought to this court for review. *Register v. State,* 10 *Ga. App.* 623 (74 S. E. 429). It was there held that, while the accused should have excepted directly to the action of the court in refusing to receive the verdict of involuntary manslaughter, nevertheless the court would deal with the question which the accused sought to present by the motion for a new trial, and it was thereupon ruled that the trial judge erred in refusing to receive the verdict of involuntary manslaughter; that the verdict was a finality and operated as an acquittal of murder and voluntary manslaughter. It was therefore adjudged that the judgment of the trial court, overruling the motion for a new trial, be reversed,

and a new trial granted. The court gave no specific instructions to the trial judge in reference to the further progress of the case, but left him to deal with it in accordance with the views expressed in the opinion of the majority of the court.

At the April term, 1912, of the superior court of Colquitt county, the accused were again arraigned under the indictment, and they thereupon filed two special pleas, one setting up that the action of the court in refusing to receive the first verdict had the legal effect of declaring a mistrial without the consent of the accused, and operated absolutely to discharge and acquit them. The other special plea set up that the verdict finding the accused guilty of involuntary manslaughter was a valid verdict, and a final termination of the case, and operated to acquit the accused of all of the grades of unlawful homicide, except the one named in the verdict, and that for this reason the accused could not again be tried for any offense under the indictment upon which they were arraigned. Both of the legal questions which the accused sought to raise by these special pleas having been decided adversely to them, they sued out a writ of error to the Supreme Court. That court passed an order transferring the record to this court, upon the ground that under the constitution of this State, the Court of Appeals, and not the Supreme Court, has exclusive jurisdiction to determine the questions raised in the record. It is pointed out in this order of the Supreme Court that the constitution (Civil Code, § 6502) provides that the Supreme Court shall be a court for the correction of errors "in all cases of conviction of a capital felony," and that the Court of Appeals "shall have jurisdiction for the trial and correction of errors in law and equity from the superior courts in all cases in which such jurisdiction is not conferred by this constitution on the Supreme Court." Civil Code, § 6506. In pursuance of this order of the Supreme Court, it becomes the duty of the Court of Appeals to determine the questions presented in the present record.

The decision of the Court of Appeals when the case was here before is the law of the case, binding alike upon the State and the accused. The effect of that decision is to forever foreclose three propositions: (1) that the accused were lawfully convicted of involuntary manslaughter in the commission of an unlawful act,

and that, not having excepted to this verdict, it was a finality and stands upon the records of Colquitt superior court to be enforced in the manner prescribed by law; (2) that the effect of this verdict was to absolutely acquit the accused of both murder and voluntary manslaughter; and (3) that the question was raised in such a way as to authorize the Court of Appeals to render a decision thereon. The State contends that inasmuch as the accused procured a new trial on their own motion, and a general judgment was entered by the Court of Appeals, awarding a new trial, without any express direction in reference to further proceedings in the case, the accused were subject to be arraigned and tried under the indictment, for any offense which might be properly involved therein, and they can not complain of a result which was brought about at their own instance and upon their own motion. The contentions of the accused upon their special plea of discharge are, that since the verdict of involuntary manslaughter was never received and filed so that a motion for a new trial might have been made for the purpose of setting aside that verdict, the accused were absolutely discharged, and can not be punished for any offense,—that the action of the court in refusing to receive the verdict was in effect to declare a mistrial without the consent of the accused; and that even if this position be unsound, they can in no event be again put on trial under the indictment, for they have been legally convicted thereunder of involuntary manslaughter, and this conviction has never been set aside.

Under the constitution of this State, where one convicted of crime has a verdict set aside on his own motion, he can be put on trial again under the same indictment; and this is true although he may have been convicted of a lower grade of crime than the highest offense charged in the indictment. For instance, where, under indictment for murder, one has been convicted of voluntary manslaughter and has that verdict set aside on his own motion for a new trial, he can be tried again for murder or manslaughter. *Brantley* v. *State,* 132 *Ga.* 573 (64 S. E. 676, 22 L. R. A. (N. S.) 959, 131 Am. St. R. 218, 16 Ann. Cas. 1203); *Perdue* v. *State,* 134 *Ga.* 300 (67 S. E. 810). If, however, the legal effect of a verdict, in whatever language expressed, is to acquit, the accused can not again be tried under the indictment upon which the verdict was found, even though a judgment of conviction is entered up on the verdict, and

the accused obtains a new trial on his own motion therefor. In such a case the motion for a new trial is itself a nullity, and all proceedings in the case after the verdict of acquittal is returned are nugatory and void. *Ezzard* v. *State*, 11 *Ga. App.* 30 (74 S. E. 551). The accused in this case acquiesced in the verdict finding them guilty of involuntary manslaughter. They have never taken an exception of any character to that verdict. It is, or should be, upon the indictment, and stands there forever as a bar to any further trial under the indictment, until it shall have been set aside upon the motion of the accused themselves for a new trial. That verdict having been a legal finality in the case, the action of the court in refusing to receive it was illegal, and everything else that occurred thereafter, including the finding of the verdict of voluntary manslaughter, and the motion for a new trial based on that verdict, were absolutely null and void. As an original proposition it might have been contended by the State with some force that by filing a motion for a new trial for the purpose of setting aside the verdict of voluntary manslaughter, the accused recognized that that verdict was valid on its face, and that a motion for a new trial was necessary in order to get rid of it, and that for this reason they might have been estopped to deny that the verdict of voluntary manslaughter was the verdict in the case which it was necessary for the accused to get rid of by a motion for a new trial. But this contention can no longer be made by the State, in view of the fact that the motion for a new trial was expressly based upon the ground that the verdict of involuntary manslaughter was the legal verdict in the case, and the Court of Appeals dealt with this question and forever settled the proposition that the verdict of involuntary manslaughter was the legal verdict in the case, and that the verdict of voluntary manslaughter was absolutely null and void. The words "after conviction," as used in the constitution, must necessarily mean after conviction by the verdict which it is sought to set aside upon motion for a new trial. Here there was no effort to set aside the only legal verdict in the case. The effect of the position taken by counsel for the accused was to acquiesce in the first verdict and insist upon its being enforced against them. This contention having been decided in their favor, they can not again be placed on trial under this indictment for any offense whatever. Certainly they can not be tried again for in-

voluntary manslaughter, because that verdict has never been set aside; and they can not again be tried for murder or voluntary manslaughter, because they have been acquitted of both of those offenses, and the principle of the decision in the *Ezzard* case, supra, applies.

Generally, a new trial is granted only for matters dehors the record, such as misbehavior of a party or a juror, or because the verdict is contrary to the evidence, or for misdirection to the jury by the judge, and matters of like character. Such was the rule at common law. 3 Blackstone's Commentaries, 387. And the common law rule prevails substantially in this State. Hence it is that an error in a judgment or decree, or an error in a ruling of the court upon the sufficiency of pleadings and matters of like nature, can not be cured by a motion for a new trial. It is undoubtedly true that as a general rule the effect of granting a new trial in a criminal case is to award a de novo investigation under the indictment upon which the accused was convicted, and to set aside and declare null and void all proceedings in the case between arraignment and the end of the trial; and the purpose of granting a new trial is to have a re-examination of the facts in issue. The specific office of a motion for a new trial is to procure the setting aside of the verdict which has been returned against the complaining party. In this case the accused prayed that a new trial be awarded to them upon several grounds, incorporating in their motion the usual statutory ground that *the verdict* was contrary to law and the evidence. It plainly appears from the motion itself that *the verdict* which the accused thus sought to have set aside was a verdict finding the accused guilty of voluntary manslaughter. That the motion for a new trial was treated in this way by the Court of Appeals when the case was here before can not admit of question. The court dealt with that motion as being one to set aside and have declared null and void the verdict of voluntary manslaughter, and this decision was put upon the sole ground that a previous valid verdict of involuntary manslaughter had been returned in the case. Having thus dealt with the motion, and having expressly ruled that by the return of the first verdict the accused stood acquitted of both voluntary manslaughter and murder, the court, in effect, treated the motion for a new trial as a motion to set aside the verdict of voluntary manslaughter. The accused had the right to file such a

motion as this, and it would have been the duty of the court to pass upon it and determine the question which they thus sought to raise. This being true, in view of the express ruling of the Court of Appeals on the subject when the case was here before, it can not now be contended that, by obtaining a new trial, the accused can again be put upon trial under the indictment, for any offense involved therein.

It is earnestly argued by counsel for the accused that their clients stand discharged, and that the verdict of involuntary manslaughter was a nullity, because the accused were not permitted to poll the jury; since this was one of their absolute rights which could not be taken away from them by the court. *Hopkins* v. *State,* 6 *Ga. App.* 403 (65 S. E. 57); *McCullough* v. *State,* 10 *Ga. App.* 403 (73 S. E. 546). Generally, the right to poll is waived, if it is not demanded, the only exception being that the accused must be given the opportunity to make the demand. In the present case, when the verdict of involuntary manslaughter was returned, the record shows that the accused had ample time to ask permission to poll the jury before they were sent back by the court for further deliberation. Even if this were not true, it would simply be ground for a new trial, and would certainly not be a question which could be raised by a special plea, asserting that the defendants were absolutely discharged by the failure of the court to allow time within which to make a demand that the jury be polled, when no exception was taken to the verdict for this reason. But besides all this, the accused are clearly estopped from raising any such question now. They acquiesced in the verdict of involuntary manslaughter. They solemnly asserted that it was a legal verdict, and that the court ought to have allowed it to be recorded upon its minutes. They procured a decision from the Court of Appeals that the verdict was a legal verdict, and that for this reason, and this reason alone, the verdict finding the accused guilty of voluntary manslaughter was absolutely null and void. They are estopped now to assert that their former position was untenable, and that a verdict which they then asserted to be legal and valid is now void on account of something which existed, and of which they had knowledge, when the contention was made. What has been said likewise disposes of the contention of counsel for the accused that they have never had an opportunity to file a motion

for a new trial to get rid of the first verdict, because it had not been received by the court and filed so that exception to it could be taken. The effect of the decision of the Court of Appeals was that publication of the verdict by the foreman of the jury was sufficient to give it legal efficacy. There was, therefore, no reason why the accused could not have filed a motion for a new trial and asked that that verdict be set aside. And furthermore, they can not now. assert that that verdict was not a final determination of the case, when, on their own motion, they procured a decision from the Court of Appeals that it was. It is perhaps true that when the case was here before, the court should have given the trial judge express instructions to receive the first verdict, have it recorded on the minutes, and enter up judgment of conviction thereon. But while no express direction of this sort was given, this is a necessary result of the decision rendered.

The suggestion was made in the argument that the verdict had been erased from the indictment, and was no longer a part of the record of the court. If this be true, the court can establish a copy of the verdict in the same manner that any other lost or destroyed record can be established. Direction will therefore be given that the judgment of the trial court, in adjudging that the accused were not entitled to be absolutely discharged and acquitted, be affirmed, and that the judgment overruling the plea of former conviction of involuntary manslaughter, and former acquittal of the offense of murder and voluntary manslaughter, be reversed, and that the verdict of involuntary manslaughter be recorded upon the minutes of the court, and that sentence under that verdict be imposed in the manner prescribed by law.

*Judgment affirmed in part, and in part reversed, with direction.*