### 10790.  KINSEY v. THE STATE.

1. Instructions to the jury on the law of involuntary manslaughter were not required in this case.
2. A conviction of voluntary manslaughter was authorized by the evidence.

DECIDED NOVEMBER 4, 1919.

Conviction of manslaughter; from Laurens superior court—Judge Kent.  June 14, 1919.

*J. S. Adams,* for plaintiff in error.

*E. L. Stephens, solicitor-general,* contra.

BLOODWORTH, J.  1.  Under the facts of this case the court did not err in failing to charge the jury on the law of involuntary manslaughter.  The accused was charged with murder, the indictment alleging that he "did kill and murder by striking and cutting the said Charlie Clover with a certain heavy piece of timber and club and knife."  The evidence showed that the wounds from which the deceased died were made by a scantling which was three or four inches wide, about three inches thick, and four or five feet long, and by a knife.  A witness swore that the defendant cut the deceased "with a knife on the left side of the chin, and on his arm; the cut made a deep gash,—I suppose to the bone.  He also cut him on the left arm between the shoulder and elbow."  Another witness swore that the deceased was "cut on the side of the jaw; the gash was about an inch and a half wide and went to the bone; he was cut to the bone on the chin, . . his jawbone was broken, . . he seemed to be crushed in several places, and also three places on the left side of his head was skinned,—had rose up kinder, had departed from the skull and was full of water, soft

like; this wound was inflicted by some kind of a blunt instrument; the wound on his chin could have been made by some sort of a knife."

"All men are presumed to intend the natural and proximate consequences of their action. When a man kills another by the use of means appropriate to that end, he is presumed to have intended that end. 'When death results from the unlawful use of a deadly weapon, the law by presumption imputes to the slayer an intention to kill.' *Gallery* v. *State,* 92 *Ga.* 463 (17 S. E. 836). 'When one voluntarily shoots at another and the shot kills, the homicide cannot be involuntary.' *Smith* v. *State,* 73 *Ga.* 79 (3). See also *Stovall* v. *State,* 106 *Ga.* 444 (3), 447 (32 S. E. 586); *Johnson* v. *State,* 4 *Ga. App.* 59 (60 S. E. 813)." *Conley* v. *State,* 21 *Ga. App.* 135 (94 S. E. 261). Counsel for plaintiff in error relies upon *Wrye* v. *State,* 99 *Ga.* 34 (25 S. E. 610). That case is not binding authority on this point, as appears from the following: "While there can not be either murder or voluntary manslaughter without an intent to kill, yet where the weapon used by the slayer was a pocket-knife, and he stabbed the deceased in the back with it, the intent to kill may be presumed; and it was not necessary that the evidence should affirmatively show that the knife used was a weapon likely to produce death. *Johnson* v. *State,* supra. The two cases cited by counsel for the plaintiff in error (*Wrye* v. *State,* 99 *Ga.* 34, 25 S. E. 610, and *Warnack* v. *State,* 3 *Ga. App.* 590, 60 S. E. 288) to sustain their contention that the court should have charged the law of involuntary manslaughter although that theory of defense was raised solely by the defendant's statement, are not binding authorities upon this point, for the reason that the general statements in the decisions of those cases, which apparently so hold, are obiter; it appearing that in the *Wrye* case there was a timely written request to give such a charge, and that in the *Warnack* case the theory of involuntary manslaughter was raised not only by the defendant's statement, but also by the sworn testimony." *Lott* v. *State,* 18 *Ga. App.* 747 (3), 748 (90 S. E. 727).

2. The verdict of voluntary manslaughter was authorized by the evidence, and the court did not err in overruling the motion for a new trial.

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*