## 17868. TAYLOR *v.* THE STATE.

1. There is no merit in either of the special grounds of the motion for a new trial which are based upon alleged errors in the charge to the jury.
2. "Under the evidence in this case, there was no reasonable theory upon which the defendant could have based his contention that, if he was guilty of any crime at all, it was involuntary manslaughter. Even if such theory could have been predicated upon the statement of the defendant, there was no error in omitting to charge the jury what would be the form of their verdict in the event they found the defendant guilty of involuntary manslaughter, no request to charge on this subject having been made by defendant's counsel."
3. Under the facts of the case there is no merit in that ground of the motion for a new trial which alleges that the court erred "in that the defendant and her attorneys did not have time and were not given an

Criminal Law, 16 C. J. p. 1056, n. 20; p. 1057, n. 26; p. 1098, n. 93; p. 1149, n. 91; p. 1177, n. 41; p. 1273, n. 4; p. 1316, n. 43.

Homicide, 29 C. J. p. 1128, n. 14; p. 1129, n. 15; p. 1149, n. 38, 41; 30 C. J. p. 141, n. 50; p. 317, n. 69.

opportunity to poll the jury nor to demand a poll of the jury between the time that the jury published its verdict and the time the judge sentenced the defendant."

4. A conviction of voluntary manslaughter was authorized by the evidence, and the overruling of the motion for a new trial was not error.

DECIDED APRIL 12, 1927.

Manslaughter; from Richmond superior court—Judge A. L. Franklin. December 21, 1926.

The deceased and the accused had been married. On the night of the homicide each went to a soft-drink place called "The Dirty Spoon," in the back of which was a dance hall. On that night at "The Dirty Spoon" was a woman named Beulah, who lived on Hellman's alley. In her statement to the jury the accused said that before going to "The Dirty Spoon" she went to the home of Beulah in search of her husband, and was there told by a neighbor that he and Beulah had gone to the dance. She then went over to "The Dirty Spoon" and there found him and Beulah. She called her husband, and Beulah said: "He can't come now. He is not your husband now, he is mine;" and the accused said: "He is my husband, and he is going home." Further words followed, and in the "disturbance" all three of these parties took part. As further showing the relation which existed between the deceased and Beulah a witness testified: "I don't know whether Hamp [the deceased] lived with this woman [Beulah]. I know he and Dorothy [the accused] were separated. . . I have seen Hamp and Beulah together." Another witness stated that during the evening and about half an hour before the homicide she saw Beulah "run into this woman [the accused] with an ice-pick." Still another witness testified that about fifteen or twenty minutes before the killing she heard the accused say: "I am going to kill a man to-night." Later the accused was seen running after the deceased with a knife in her hand. She caught up with him and cut him over the heart. At that time the hands of the deceased were "down by the side of him." From this wound the deceased died during the night. In her statement the accused said that she had a small pen-knife wrapped in her handkerchief, and added, "I did not cut him to kill him." The accused was convicted of voluntary manslaughter, and her motion for a new trial was overruled.

*Peebles & Bowden,* for plaintiff in error.

*George Hains, solicitor-general, John M. Graham,* contra.

BLOODWORTH, J. (After stating the foregoing facts.) 1. Only the second and third headnotes need elaboration.

2. Special ground 2 of the motion for a new trial is as follows: "Because the court failed to charge the jury on the law of involuntary manslaughter, and the defendant's statement, taken as a whole, demanded a charge on involuntary manslaughter." An examination of the evidence in this case clearly shows that there is nothing in it upon which the jury could base a verdict of involuntary manslaughter. Where one voluntarily stabs another and death results, the homicide can not be involuntary. The evidence shows beyond question that the accused deliberately stabbed the deceased over the heart. "Where a blow mortal in its nature is wilfully inflicted with an instrument likely to cause death, the homicide produced by it is not involuntary manslaughter, but unless justifiable, is either murder or voluntary manslaughter." *Boatwright* v. *State,* 89 *Ga.* 140 (4) (15 S. E. 21). "While there can be neither murder nor voluntary manslaughter without an intent to kill, yet where the weapon used was a pocket-knife, and the defendant stabbed the deceased in the neck with it, an intent to kill may be presumed." *Johnson* v. *State,* 4 *Ga. App.* 59 (3) (60 S. E. 813). Moreover, there was no request to charge the jury on involuntary manslaughter. In *Jackson* v. *State,* 91 *Ga.* 271 (18 S. E. 298, 44 Am. St. R. 22), the court held: "Where there is nothing in the evidence to indicate that the killing was not voluntary, and where no charge is requested on that subject, involuntary manslaughter is not an issue in the case, and no allusion should be made to it in charging the jury, even though the prisoner's statement by indirection suggest such a theory." See also *Thornton* v. *State,* 107 *Ga.* 683 (6) (33 S. E. 673); *Lott* v. *State,* 18 *Ga. App.* 747 (2, 3) (90 S. E. 727); *Kinsey* v. *State,* 24 *Ga. App.* 342, 343 (100 S. E. 770). So it is clear that the court did not err in failing to charge the law of involuntary manslaughter.

3. The next ground of the motion for a new trial alleges error "in that the defendant and her attorneys did not have time and were not given an opportunity to poll the jury nor to demand a poll of the jury between the time that the jury published its ver-

dict and the time the judge sentenced the defendant." It appears that when the verdict, which fixed the punishment at a minimum of ten years and a maximum of fifteen years, was published the presiding judge turned to the defendant and said, "So that will be your sentence." To support their contention that this ground is error counsel for the plaintiff in error cite and rely upon *McCullough* v. *State,* 10 *Ga. App.* 403 (6, 7) (73 S. E. 546). That case presents a very different question from the one presented in this case. When the decision in the *McCullough* case was rendered the judge fixed the sentence, and in doing so had a wide discretion. Under the present law (Acts 1919, p. 387; Park's Penal Code Supp. 1922, § 1081 (*e*) the jury fixes the minimum and maximum term in such cases as this, and in sentencing the person convicted the judge has no discretion, but "shall commit said convicted person to the penitentiary in accordance with the verdict of the jury." The decision in the *McCullough* case rested not so much upon the fact that the judge announced the sentence immediately upon the publication of the verdict as upon the fact that the judge sentenced the accused to the extreme limit of the punishment allowed by the statute, and this court said (p. 406): "This precipitate and severe sentence could have had but one effect upon the jury, namely, the impression of judicial approbation of the verdict, and individual indignation against the accused. The sentence thus imposed deprived the accused of his legal right to poll the jury, at least it destroyed any possible value which the accused could have acquired by the subsequent polling of the jury; for even if any juror had been reluctant in consenting to the verdict, and had changed his mind and had concluded to withdraw his assent when polled, this strong approval by the court of the verdict would have induced any wavering juror to abandon any intended dissent and to agree to the verdict on subsequent polling." The reasoning in that case is not applicable to the case under consideration. When the jury in this case returned its verdict the announcement by the judge, "So that will be your sentence," could not have shown a "judicial approbation of the verdict and individual indignation against the accused," and could not "have induced any wavering juror to abandon any intended dissent and to agree to the verdict on subsequent polling," but simply amounted to an announcement that when the sentence was reduced to writing

and formally entered, it would, as required by the statute, follow the verdict. Moreover, in the *McCullough* case this court expressly announced that "the evidence did not demand the finding." In *Tilton* v. *State*, 52 *Ga.* 478, it was held: "The proper time to demand the right to poll the jury is after the publication of the verdict and before the dispersion of the jury and recording of the verdict." Within the time allowed counsel for the accused to demand a poll of the jury nothing was done to prevent them from doing so, but they did not make any request therefor.

In *Freeman* v. *Brown*, 115 *Ga.* 23 (41 S. E. 385), Mr. Justice Fish said: "What the judge orally declares is no judgment until it has been put in writing and entered as such." See *Foy* v. *McCrary*, 157 *Ga.* 461 (121 S. E. 804).

*Judgment affirmed. Broyles, C. J., and Luke, J., concur.*